## T. Clint SHUFFIELD and Elaine SHUFFIELD *v.* Rosalee HUNTER

CA 79-229                    597 S.W. 2d 852

Court of Appeals of Arkansas
Opinion delivered April 16, 1980
Released for publication May 7, 1980

*Henry Morgan,* for appellants.

*Wood, Smith, Schnipper & White,* for appellee.

JAMES H. PILKINTON, Judge. Appellants seek to recover a real estate commission. In their complaint below they allege that on or about October 15, 1973, they entered into an oral contract with appellee, Rosalee Hunter, and her husband, Glenn Hunter, who has since died. Mrs. Hunter filed an answer denying all of the material allegations of the complaint. The parties agreed to waive a jury trial and the issues were heard by the circuit court without a jury. The trial resulted in a judgment for the defendant, Rosalee Hunter, and the plaintiffs have appealed.

Some of the factual background is not in dispute. The Hunters owned a certain farm in Clark County, Arkansas, containing 186 acres. Title was held as an estate by the entirety. Mr. Hunter died before this case was filed.

Some time in 1973 Mr. and Mrs. Hunter listed this property for sale with the United Farm Agency in Hot Springs, Arkansas. United was given an exclusive listing for a definite period of time. Appellants T. Clint Shuffield and Elaine Shuffield, husband and wife, are both licensed real estate brokers at Arkadelphia, Arkansas. At times they worked with United in trying to sell property listed with United. During the listing period and with the permission of United the Shuffields, on their own motion, also attempted to sell the Hunter land. While the United listing was in effect Mr. Shuffield talked to Mr. and Mrs. John C. Van Fosson, then of Ottawa, Kansas, about the Hunter place. This was in 1973. Mr. Van Fosson was not interested in buying the Hunter land at that time. The Shuffields sold him another tract of land, and Mr. and Mrs. Van Fosson moved to Arkansas in December, 1974. The United listing expired in late 1974.

Mr. Glen Hunter was in ill health and in 1975 the Hunters renewed their efforts to sell this land. In June of 1975

Mr. and Mrs. Hunter sold the 168 acres to Mr. and Mrs. Van Fosson for $180,000. Mr. Hunter died shortly thereafter; the exact date of his death is not revealed by the record. In any event, some time after the sale was closed Mr. and Mrs. Shuffield wrote a letter to Mrs. Rosalee Hunter claiming a commission on the sale. It was the Shuffields' contention that they had a valid oral listing of this property, had shown it to Mr. and Mrs. John C. Van Fosson, and were entitled to a commission under the circumstances.

While the complaint alleged that an oral contract had been entered into in 1973, Mr. Shuffield testified at the trial that the alleged agreement was made in 1975. Mr. Shuffield claimed that he contacted Mr. and Mrs. Hunter again in March, 1975 about a listing. Although the Hunters refused him a listing they did say that if the Shuffields found a purchaser, they would work with the Shuffields in selling the property. After saying that he had contacted the Hunters again, Mr. Shuffield testified as follows:

Q. And what happened?

A. I was told they were unhappy, the Hunters were unhappy with a prior listing and that they would not sign an exclusive.

Q. All right, have you ever had a non-exclusive written listing?

A. Yes.

Q. And, did they sign it?

A. No.

Q. Okay, you never really got a written listing at all from them?

A. No, I did not.

Q. The most you got was Mr. Hunter's saying: If you find someone, we'll work with you, is that right?

A. Yes.

Mrs. Shuffield admitted that she did not talk to the Hunters at all, but knew that her husband did, and she testified that Mr. Shuffield's contact with the Hunters was in 1974.

Mrs. Hunter denied that she ever told Mr. Shuffield anything, and denied that Mr. and Mrs. Shuffield had any kind of a contract or oral agreement with either her or her husband. Her testimony was as follows:

Q. Did he ever tell or did he ever discuss with you about him getting a listing from you?

A. No, he never did.

Q. Did he ever tell you he was going to charge you 10 percent?

A. No, sir. He talked to me one time on the phone and that's when Glen was ill and I didn't want him to call.

Q. Do you recall when that one conversation was the one time he talked to you?

A. I would say late '74 year, '74.

Q. Late '74?

A. Yes, sir.

Q. But, you never did at any time enter into a contract with him to sell?

A. No, sir; no, sir.

Q. Did he call you in March of '75, and tell you that he wanted a listing on it like he testified?

A. No, he didn't. He did not talk to me.

Q. Did you ever provide him with a description of the property?

A. I never did.

Q. Did you ever give him a price that you would take for the property?

A. No, sir, I never did.

The record shows that Mr. Shuffield was asked the specific question:

Q. How many times did you say that you took Mr. Van Fosson out to look at the property?

A. One time.

To say the least, the evidence in this case is conflicting and the testimony of appellants apparently was not impressive to the trial court. The testimony of Mr. Van Fosson, the purchaser, is not at all favorable to the contentions of appellants, but the evidence given by him supports the position of the appellee in most respects. For example, he testified as follows:

Q. So you are saying that the only time that you visited the Shuffields concerning this property was on that one occasion in 1973 when they took you out to visit the property?

A. That's right.

Q. And they brought you back to the office?

A. That's right.

Q. Do you recall any other attempts on the Shuffields' part to encourage you to purchase this particular piece of property?

A. No.

Insofar as the law is concerned, a contract of employment between the broker and principal may be either oral or written. *Vanemburg v. Duffey,* 177 Ark. 663, 7 S.W. 2d 336 (1928) and *Long v. Risley,* 208 Ark. 608, 188 S.W. 2d 132 (1945). Such an agreement does not come under the statute of frauds. *Vaught v. Paddock,* 98 Ark. 10, 135 S.W. 331 (1911). The contract may be either expressed or implied, but whatever its form the employment contract must appear to have an offer and acceptance. *Vanemburg v. Duffey, supra.* A broker cannot recover compensation for services voluntarily rendered in the absence of subsequent acts of ratification on the part of the principal. *Long v. Risley, supra.* In *Nickel v. Dashko,* 174 Ark. 818, 298 S.W. 204 (1927), there was a dispute as to whether the broker was the agent of the seller. The court in *Nickel* stated that the owner must say or do something tending to prove that he accepted the broker as his agent. Merely selling to the party whom the broker procured was not enough. See also *Peebles v. Sneed,* 207 Ark. 1, at 5, 179 S.W. 2d 156 (1944).

To say the least, the case before us presented a fact question for the trial court to determine whether there was an oral contract or whether the circumstances were such as to justify the conclusion that appellants are entitled to a commission. The circuit court found against appellants. Where the testimony is conflicting, as here, the finding of the circuit court is conclusive upon appeal. *Vanemburg v. Duffey, supra.* The finding of the trial court sitting as a jury, on questions of fact, is as conclusive on appeal as the finding of a jury; and if there is any substantial evidence to support the findings of the trial court, its findings will not be disturbed.

In this case there is substantial evidence to support the finding of the trial court, and the judgment must therefore be affirmed.

Affirmed.