GROWTH PROPERTIES I et al
*v.* Druie CANNON et al

84-53                                    669 S.W.2d.447

Supreme Court of Arkansas
Opinion delivered May 21, 1984

*Eudox Patterson,* for appellant.

*McMillan, Turner & McCorkle,* for appellee.

STEELE HAYS, Justice. This case involves the tort of outrage. Appellees are the children of Kell Cannon and the surviving spouse and children of Mildred Fouts Cannon. Appellees filed suit against the appellants, corporations which operate Rest Haven Memorial Gardens, alleging that during 1982 the appellants, notwithstanding their express obligation to supply proper, perpetual care, committed a willful trespass to the graves of Kell Cannon and Mildred Cannon by constructing a road across the gravesites for the movement of heavy equipment, to the severe mental anguish and distress of the appellees. The cause was tried before the circuit judge sitting as a jury, who awarded $2,500 in compensatory damages to some and $1,500 to others, with an

additional $5,000 in punitive damages to each of eight appellees, a total judgment of $55,000[1].

Appellants' first two points for reversal may be treated as one — that it was error to award either compensatory or punitive damages in the absence of proof of actual damage. They submit that none of the appellees testified to any loss or injury "except some rather vague references to feeling bad about it, or being 'heartsick'." But the answer to the argument lies in the fact that the essence of the tort of outrage is the injury to the plaintiff's emotional well-being because of outrageous treatment by the defendant. If the conduct is sufficiently flagrant to give rise to the tort, then the injury the law seeks to redress is the anguish itself and it need not rest, parasitically, on more demonstrative loss or injury. *MBM* v. *Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980); Prosser, Law of Torts, 4th Edition, § 12, p. 59-60; Restatement of Torts, 2d, § 905 (b) p. 456. In two early cases this court pointed the way for what Professors Calvert Magruder[2] and William L. Prosser[3] a decade later defined as an emerging tort based on the intentional infliction of mental suffering. *Wilson* v. *Wilkins*, 181 Ark. 137, 25 S.W.2d 428 (1930); *Lyons* v. *Smith*, 176 Ark. 728, 3 S.W.2d 982 (1928). We said that physical injury as a prerequisite to a recovery for mental suffering did not apply to wrongs committed deliberately or wantonly and in both cases we upheld awards of punitive damages superimposed on compensatory damages where the insult was injured feelings without corporal injury. See also *Geyer* v. *Western Union Telegraph Co.*, 192 Ark. 578, 93 S.W.2d 660 (1936). Here, the circuit judge determined that as a result of appellants' conduct, which he found consistent with the tort of outrage, actual damages of $1,500 by five plaintiffs and $2,500 by three others, were sustained because of mental anguish. Hence, mental anguish itself is the actual damage, and proof of special damage in terms of out-of-pocket expenses of exact

---

[1]The judgment makes no mention of plaintiff Minnie Cannon.

[2]Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033.

[3]Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Michigan Law Review 814.

pecuniary measurement is not essential to a recovery of compensatory damages.

In *MBM* v. *Counce, supra,* this court examined what has come to be called the tort of outrageous conduct, drawing a careful distinction between our earlier cases in which recovery for mental suffering without physical injury had been allowed, as in *Erwin* v. *Milligan,* 188 Ark. 658, 67 S.W.2d 592 (1934); *Wilson* v. *Wilkins, supra;* and *Rogers* v. *Williard,* 144 Ark. 587, 223 S.W. 15 (1920), or denied, as in *Geyer* v. *Western Union Telegraph,* 192 Ark. 578, 93 S.W.2d 660 (1936) and *Davis* v. *Richardson,* 76 Ark. 348, 89 S.W. 318 (1905) and *St. Louis Iron Mt. & So. Ry. Co.* v. *Bragg,* 69 Ark. 402, 64 S.W. 226 (1901). There is no need to repeat the uncertain progress that brought us to the rule announced in *MBM* v. *Counce,* as that is done with care in the *Counce* opinion, where we subscribed to the view of William L. Prosser that the wrong of intentional infliction of mental suffering had been created by case law and was entitled to recognition as a separate tort. All that was required of the judiciary was to abandon the contrivance of finding a constructive or theoretical tort to justify an award of damages for mental anguish. In acknowledging the existence of this "new" tort the court in *MBM* v. *Counce* emphasized that the conduct, to be actionable, required that it be so extreme and outrageous as to be intolerable in a civilized society. Later cases recognizing the tort of outrage as such are *Givens* v. *Hixon,* 275 Ark. 370, 631 S.W.2d 263 (1982); *Dalrymple* v. *Fields,* 276 Ark. 185, 633 S.W.2d 362 (1982), and *Orlando* v. *Alamo,* 646 F.2d 1288 (8th Cir. 1981).

There was proof in this case that the appellees, a close-knit family, had acquired four connecting gravesites in appellants' Rest Haven Memorial Gardens, which they attended and beautified with some regularity after the burial of Kell Cannon in 1969 and Mildred Fouts Cannon in 1974. In the winter or early spring of 1982 and for several months thereafter appellants constructed a lawn crypt near the Cannon graves. The construction interfered with existing drainage and water collected at the gravesites after a rainfall. To alleviate the problem, appellants began the installation of a french drain and in the course of construction heavy

vehicles were driven across the graves. There was testimony from witnesses other than the appellees that the Cannon vaults became exposed as a result of the excavation work. Some of the appellees complained, others refrained from coming during the construction. One appellee was told by one of appellants' employees, evidently with some abruptness, not to come back until the work was finished if she found it upsetting.

Appellants urge that the work was necessary to correct a drainage problem and that no means of access existed which did not require passage over existing graves. But those arguments cannot be sustained, as there was proof the standing water was the result of the lawn crypt, which appellants elected to construct, and, beyond that, proof that the appellants could have avoided damaging the gravesites by simply removing and rebuilding what appears to be a low brick wall. Without attempting to recount the testimony in detail, it is enough to say photographic exhibits show considerable excavation occurred around the graves and heavy vehicles passed back and forth over the gravesites to within a foot or two of the headstones, and that appellees were anguished to the satisfaction of the trial judge by what they regarded as the desecration of their family burial plot. Had there been no other means of accomplishing the drain construction it might be more difficult to justify the result in this case, but the proof showed that the appellants had an alternative open to them as a means of access which did not require movement over gravesites, which they opted against, evidently because it meant removing and rebuilding a brick wall adjacent to the crypt.

Appellants remind us that there can be no recovery of punitive damages without actual damages. *Williams* v. *Carr*, 263 Ark. 326, 565 S.W.2d 400 (1978); *Williams* v. *Walker*, 256 Ark. 421, 508 S.W.2d 52 (1974). But it is only where no compensatory or actual damages are awarded that the rule pertains — it has no application where the jury or trial judge awards compensatory damages, as is true of the case before us.

Next, appellants insist that evidence of malice, will-

fulness or wantonness is lacking and therefore it was error to award punitive damages. But the argument tends to confuse the intent to cause suffering with the intent to do an act from which suffering can be expected to result. The former may be maliciously intended while the latter may be merely the result of a conscious indifference to the consequences. But even the latter, if sufficiently wanton, will sustain the award. *Southern Farm Bureau Casualty Ins. Co.* v. *Daniel,* 246 Ark. 849, 440 S.W.2d 582 (1969); *Vogler* v. *O'Neal,* 226 Ark. 1007, 295 S.W.2d 629 (1956); *Miller* v. *Blanton,* 213 Ark. 246, 210 S.W.2d 293 (1948); *Texarkana Gas & Electric Co.* v. *Orr,* 59 Ark. 215 (1894). We concede that no inference of willful malice may be drawn from the evidence in this case, but we do not agree that punitive damages are not recoverable as a matter of law on the evidence presented. Appellees proved the appellants not only breached a duty to provide perpetual care to appellees' family members but engaged in a prolonged and callous desecration of the graves of their kinsmen. Opinions can differ widely, of course, as to where the line falls between conduct that merely offends and that which is so outrageous as to be intolerable in a civilized society. Here, the trial court sitting as a jury determined that appellants' conduct was intolerable and we cannot say the supporting evidence was wholly without substance in view of the deep human feelings involved. The grounds where close family members — wives, parents, children — lie buried have a special place in the minds and sentiments of men and women of every race and culture. They are places to be preserved from the erosions of time and nature, if possible, and certainly from the wanton desecration of those who have entered into a covenant to keep them perpetually protected. *Matthews* v. *Forrest,* 235 N.C. 281, 69 S.E.2d 553 (1952); *Bessemer Land and Improvement Co.* v. *Jenkins,* 18 So. 565 (Ala. 1895); Mental Suffering for Trespass to Burial Lot, 6 Vand. L. Rev. 799 at p. 801. The argument that it was unavoidable was obviously rejected by the trier of fact.

The final argument, that appellants acted in good faith based on the belief that they had a contractual right and obligation under the by-laws to proceed as they did was rejected by the trial court and we cannot say the finding is inconsistent with the evidence. Quite aside from the fact the

by-laws were adopted well after the Cannons were buried, the argument ignores the fact that having created the problem, appellants chose to remedy it by using the Cannon gravesites as a thoroughfare for construction vehicles, when an alternative route, albeit less convenient, was open to them. The evidence is not so lacking in substance that we can conclude that the findings of the trial court are unsupported. *Shuffield* v. *Hunter,* 268 Ark. 1003, 597 S.W.2d 852 (1980); *Charlie Stuart Oldsmobile, Inc.* v. *Smith,* 171 Ind. App. 315, 357 N.E.2d 247 (Ind., In Banc 1976).

We agree with appellants in one respect — damages for the mental suffering that results from the tort of outrage cannot be justified on behalf of one who is a party in name only. Don Cannon did not testify nor appear at the trial and it was error to award damages for emotional distress in the absence of specific proof. The overtones of conjecture which attach to claims of mental suffering unaccompanied by physical injury have led to the view that mental anguish may not be inferred on behalf of someone who fails to testify concerning his own experience. See *Dale* v. *Sutton,* 273 Ark. 396, 620 S.W.2d 293 (1981) and *Peugh* v. *Oliger, Adm'x,* 233 Ark. 281, 345 S.W.2d 610 (1961). The award of damages to Don Cannon is disallowed and the judgment is modified accordingly.

Affirmed as modified.