Chris IKANI *v.* Maggie BENNETT
and Michael B. RUSSELL

84-193                                              682 S.W.2d 747

Supreme Court of Arkansas
Opinion delivered January 21, 1985

*Marion A. Humphrey,* for appellant.

*Steve Clark,* Att'y Gen., by: *Curtis L. Nebben,* Asst. Att'y Gen., for appellees.

STEELE HAYS, Justice. Christian Ikani, a counselor at the Department of Correction, filed this defamation suit against two other Department of Correction employees, Maggie Bennett and Mike Russell. In November, 1978, Ikani had been detained by the FBI for questioning in connection with an illegal sale of guns to Nigeria. He alleges that in 1983 Maggie Bennett slandered him by making a false statement to Mike Russell that he had been arrested for smuggling guns to Nigeria and Russell libeled him by recording the remark in a file.

At the close of Ikani's case Bennett and Russell moved for a directed verdict which the trial court granted. The case is appealed here on the single issue that it was error to grant a directed verdict on the proof presented. We affirm the trial court.

Reviewing a motion for a directed verdict requires that the evidence be examined most favorably to the party against whom the verdict is directed, including all reasonable inferences that could be drawn from the evidence. If any substantial evidence exists tending to establish an issue of fact in favor of that party, it is error for the court to take the case from the jury. *Dildine* v. *Clark Equipment Co.,* 282 Ark. 130, 666 S.W.2d 692 (1984); *Farm Bureau Mutual Insurance Co.* v. *Parks,* 266 Ark. 454, 585 S.W.2d 936 (1979).

We do not consider whether the fault requirement accorded media defendants in *Gertz* v. *Robert Welch,* 418 U.S. 323 (1974) and *KARK-TV* v. *Simon and Smith,* 280 Ark. 228, 656 S.W.2d 702 (1983), should be applied to nonmedia defendants, as our holding is not dependent on that point. It is still unsettled whether the fault principle announced in *Gertz* should be extended beyond the media (see *Gertz and the Common Law of Defamation: Of Fault, Nonmedia Defendants, and Conditional Privileges,* Vol. XV, Tex. Tech L. Rev., No. 4, p. 823), and the United States Supreme Court has expressly left that question open. See *Hutchinson* v. *Proxmire,* 443 U.S. 111 (1979). That issue need not be answered because the appellees pleaded and established the common law defense of privilege, which we believe is controlling here.

In *Dillard Department Stores Inc.* v. *Felton,* 276 Ark. 304, 634 S.W.2d 135 (1982), we recognized the interests of employers are subject to a qualified privilege, citing Restatement of Torts (Second), § 595 (1981) and Prosser, the Law of Torts, (3rd Edition), § 110. The privilege is defined in *Merkel* v. *Carter Carburetor Corp.,* 175 F.2 323 (8th Cir. 1949), as:

> A privileged communication is an exception to the rule that every defamatory publication implies malice. A qualified privilege is extended to a communication made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, either legal, moral, or social, if made to a person having a corresponding interest or duty and the burden of proving the existence of malice is cast upon the person claiming to have been defamed.

There is no substantial evidence in this case the appellees acted from improper motives, or that the privilege was abused or exceeded reasonable bounds. The basis for the privilege is plain, both Bennett and Russell had supervisory responsibilities over appellant. That Maggie Bennett was Ikani's superior is not questioned, but as to Mike Russell, Ikani's testimony is inconclusive — at one point he wasn't

sure whether Russell had supervisory status, at another point he seemed to make that concession. If any doubt remains, the testimony of Dr. R. F. Musolino, head of the unit to which these parties were assigned, a witness for Ikani, settles the matter. Russell, he said, was in charge of Ikani.

Thus, we have an exchange of information between two supervisory employees concerning an employee under their charge and for whose performance they are responsible. The information, touching as it did on possible illegal activity, was not merely relevant to job performance, but in the charged atmosphere of this particular employment, to the security of the prison itself. There was uncontradicted proof that information of this kind was systematically used by inmates to extort favors or bribes from personnel about whom damaging information was known. We think it would not be in the public interest to impede the free exchange of relevant information between individuals having the responsibilities of these appellees by removing the privilege given their utterances, so long as those communications do not exceed the limits of the privilege and are not primarily inspired by ill will or spite.

We find no substantial evidence that Russell divulged the notation in his file to others. Ikani mentioned Lt. Jimmy Taggart as one possibility, but Taggart, who was Ikani's witness, said he had never seen Russell's file, that Ikani himself told him about the incident. Besides, Taggart was Chief of Security of the Unit, and we are not prepared to say the privilege would not apply to him in the absence of any argument from the appellant to that effect.

We noted in *Dillard* v. *Felton, supra,* that the privilege is not absolute, but is subject to the condition that the communication must be exercised in a reasonable manner and for a proper purpose. The immunity does not protect a defendant from publication to persons other than those whose hearing is reasonably believed to be necessary and useful for the furtherance of that interest. Here, appellant's brief does not discuss the pivotal issue of privilege, it simply argues that the statements were false, were injurious to

Ikani's reputation, and hence a prima facie case of defamation was established. But when the defense of privilege is pleaded and established in the first instance, as in this case, the burden shifts to the plaintiff to prove the privilege has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said. Prosser and Keeton on Torts, (5th Edition), § 115, p. 835. *McClain* v. *Anderson*, 246 Ark. 638, 439 S.W.2d 296 (1969).

Affirmed.