Tommy DIXON *v.* STATE of Arkansas

CR 92-963                                    846 S.W.2d 170

Supreme Court of Arkansas
Opinion delivered February 1, 1993
[Rehearing denied March 8, 1993.]

*Henry & Mooney*, by: *Wayne Mooney*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y

Gen., for appellee.

ROBERT H. DUDLEY, Justice. The jury found appellant guilty of first degree murder. There was substantial circumstantial evidence to prove that he ran over his wife more than twice with his automobile, and there was no reversible trial error. Accordingly, we affirm the judgment of conviction.

The conviction was based upon circumstantial evidence. The appellant recognizes that circumstantial evidence can constitute substantial evidence, see Hill v. State, 299 Ark. 327, 773 S.W.2d 424 (1989), but questions whether there was substantial evidence of his guilt, and, even if there was substantial evidence of his guilt, argues that it did not exclude every other reasonable hypothesis as is required in cases of circumstantial evidence. See Bennett v. State, 308 Ark. 393, 825 S.W.2d 560 (1992). He contends that it is reasonable to hypothecate that Jackie Shempert was the murderer. As a result of the argument, we must set the evidence out in some detail.

Five days after the victim's death, appellant gave the police a statement in which he said that on the night of his wife's death he and his wife got into an argument while they were at the Starlight nightclub near Bondsville in Mississippi County. He said he was intoxicated, but drove their automobile as they left the nightclub. He drove the car only a short distance when his wife began scratching and clawing him. He said he had to hit her in the mouth and grab her hair to restrain her. He stated that he felt the car swerve as she jumped out of the car. He said he drove the car an additional seventy-five yards and then backed the car and found her beside the road.

Separate evidence established that appellant's automobile was blue in color and that the victim was wearing a black sweater. Even though it was below freezing, the victim was not wearing a coat or shoes.

Herbert Ainsworth testified that at, or shortly after, midnight he was a passenger in John Murphy's vehicle as they were driving in an easterly direction on their way to the Starlight club when he saw a dark colored car on the side of the road. The dark colored car was headed west, which was the direction appellant and the victim would have driven. After passing the dark colored

car Ainsworth saw someone crawling beside the road. That person had on a black sweater and pants. He saw the dark colored car's brake lights come on and then saw its back-up lights come on. He thought either a fight had occurred, or else the person crawling was drunk. He and Murphy decided to continue east to the club. While travelling to the club, Ainsworth saw a car driven by Jackie Shempert going in the opposite direction, or west.

John Murphy gave much the same testimony. He saw the person crawling beside the road and did not think that person was hurt. He saw the brake lights on the parked car and then saw its back-up lights come on. He testified that the dark colored car had bright back-up lights. He thought that the dark colored car might be backing up to pick up a drunk. They went to the club and returned a short time later.

Lori Hill testified that she and Jackie Shempert had been at the Starlight club and were in Shempert's car on their way home. They were headed west. Lori Hill saw a body beside the road. Shempert immediately began to turn the car around, and, while doing so, a car driven by Archie Ohler approached. Ohler was in his lane headed east toward the Starlight club and stopped immediately. Lori Hill testified that Shempert and Ohler got out of the two vehicles, looked at the body, and Shempert said, "It's Shelia Dixon," and "Let's go to my brother's house and call 911 from there." Hill testified that she and Shempert went to Shempert's house and called the police.

Archie Ohler testified that he was on his way to the nightclub when he saw the victim's body on the opposite side of the road. Her legs were in the roadway while the upper part of her body was off the road. He stopped and turned his car so that his headlights shined on the victim's body.

Ohler testified that while he was maneuvering his car to get his car lights on the body, Shempert and Hill completed their turnaround and returned. He stated that they did not see any other vehicles. As Ohler and Shempert looked at the horribly battered body, appellant drove up, and ran over the victim's leg. Ohler testified that appellant "seemed to come up out of no-where." Appellant, who was drunk, said someone had run over his wife.

Deputy Sheriff Jones testified that he responded to the call. When he arrived, the appellant was there and said that he and his wife had been arguing and that he let her out of the car, drove about one hundred yards, turned around, and came back to get her but found that someone had run over her. The victim's shoes were found in appellant's car, as well as a large amount of hair that appeared to be from her head. Stains that appeared to be blood were found in the front seat and on the right rear wheel and tire, the right rear quarter panel, and the right rear wheel well of appellant's car. Fresh scratches were found on the lower part of the front bumper. The victim's purse was found in the trunk of the car. It contained a letter to the appellant that stated she was suing him for divorce because, "This is hell on earth for me. I need out and away from you. Tommy, you're too, too rough for me. . . ." The officers examined the other vehicles at the scene, but none of them showed any evidence that they had struck the victim. Shempert had left earlier to call the police, and his car was not there to be examined at the time. The police examined it two days later, and there was no evidence that it had struck the victim.

Dr. Violet Hnilica, the forensic pathologist from the Medical Examiner's office, testified that the victim suffered multiple injuries in four different areas of her body and that the pattern of abrasions indicated the victim "had been run over probably more than twice." Dr. Hnilica further testified that the victim's injuries were inconsistent with falling out of a car.

The foregoing constitutes substantial evidence that the victim was killed by being run over more than twice by an automobile. Appellant had a motive and the opportunity to kill the victim. If the victim had intended to voluntarily get out of the car, it is unlikely that she would have gotten out barefooted and without a coat in the freezing cold weather. The hair and blood in the car is evidence of a violent struggle. If the victim had only fallen from the passenger side door, and appellant had only accidentally run over her, it would not have damaged the lower part of the front bumper. The testimony of Ainsworth and Martin is substantial circumstantial evidence that, at the time they saw the dark colored car, appellant applied his brakes and put his vehicle in reverse to back over the victim. Appellant's vehicle is the only vehicle that showed evidence of running over the victim. All of the testimony taken together constitutes substantial

circumstantial evidence of appellant's guilt.

■ Appellant also contends it is reasonable to hypothecate that Shempert is the one who ran over the victim. The argument is without basis. Lori Hill's testimony and the physical evidence that Shempert's vehicle had not struck anyone negates such a hypothesis. Accordingly, we hold there is substantial evidence to support the conviction.

■ Appellant did not object to some photographs being admitted into evidence. He now argues that we should reverse and remand because the trial court erred in not excluding the photographs on its own motion. We summarily reject the argument because we have repeatedly said that we do not have the "plain error" rule in this State. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

■ Appellant's final argument is that the trial court erred in admitting into evidence the letter to the appellant that was found in the victim's purse. The objection at trial was based only on relevancy. A trial court's decision regarding relevancy is entitled to great weight and will be reversed only if the court abused its discretion. *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990). The trial court ruled the letter was relevant because it showed motive. Although the State is not required to prove motive, it may introduce evidence showing all of the circumstances that explain the act, illustrate the accused's state of mind, or show a motive for the crime. *Richmond* v. *State*, 302 Ark. 498, 79 S.W.2d 691 (1990).

Affirmed.