The TRAVELERS INSURANCE COMPANY and Dan Ray
*v.* Anna F. SMITH, Roseann McKibben, and Sue Ellen Smith

98-433                                991 S.W.2d 591

Supreme Court of Arkansas
Opinion delivered June 10, 1999

82

*Davis, Cox & Wright PLC*, by: *Constance G. Clark* and *Don A. Taylor*, for appellants.

*Jeff Slaton*, for appellee Anna F. Smith.

*Odom & Elliott*, by: *J. Timothy Smith*, for appellee Roseann McKibben.

*Davis & Watson*, by: *Jeff H. Watson*, for appellee Sue Ellen Smith.

RAY THORNTON, Justice. This appeal is from a jury verdict in favor of appellees, Anna F. Smith, Roseann McKibben, and Sue Ellen Smith, the widow and daughters of the late Alva Smith, against appellants, Travelers Insurance Company

and their adjuster, Dan Ray, the workers' compensation carrier for Mr. Smith's employer. The trial court submitted to the jury the question whether appellants committed the tort of outrage by interfering with the rights of appellees to promptly bury their family member in accordance with their wishes. The jury returned a verdict for the Smith family and appellants sought a judgment notwithstanding the verdict, on the basis that there was no substantial evidence to support the jury's findings. The trial court denied the motion and appellants bring this appeal from that ruling and two other assignments of error. This case was certified to us pursuant to Ark. Sup. Ct. R. 1-2(a)(7), as a second or subsequent appeal following an appeal that has been decided in the supreme court.[1] On review, we find no reversible error and affirm.

On Friday, August 19, 1994, Alva Smith, a truck driver for Gerald Johnson Trucking, died in a one-vehicle accident on Highway 412 in Springdale, in the course and scope of his employment. Travelers was notified of the accident and assigned Dan Ray to the claim on the day of the accident. The Arkansas State Police investigated the accident and determined that the cause of death was massive head trauma suffered as a result of the accident, a conclusion concurred in by the Washington County Coroner's office. Appellants were notified of the cause of death on the day of the accident, and Ray was told when he inquired about an autopsy that the county would not be requesting one because the cause of death was clear.

Mr. Smith's body was taken to Sisco Funeral Chapel in Springdale. Mrs. Anna Smith, the wife of the deceased, asked the funeral home to handle the service and authorized them to contact appellants about insurance to pay for the funeral. The family chose a traditional funeral, with a full service and visitation, based on assurances from the funeral home that, notwithstanding Mr. Smith's injuries, the body could be made presentable for the

---

[1] *See Travelers Ins. Co. v. Smith*, 329 Ark. 336, 947 S.W.2d 382 (1997)(denial of appellants' petition for writ of prohibition contending that the circuit court was without jurisdiction to hear the case as the Workers' Compensation Act was appellee's only remedy).

open-casket funeral they desired. An employee of the funeral home contacted Travelers on Friday, August 19, and was told that the company would have to have an autopsy to determine the cause of death, because they thought a pre-existing condition, such as a heart problem, had caused Mr. Smith's death.

The funeral home advised the family that appellants were denying insurance benefits until they had an autopsy. Mrs. Smith and Ms. McKibben, who planned the funeral, were without funds to pay for the funeral themselves without the anticipated insurance benefits, so Mrs. Smith reluctantly agreed to the autopsy if that was required. The funeral home director testified at trial that embalming hinders the ability to get clear results in an autopsy, and that they believed that if an autopsy had been ordered, it was illegal to proceed with embalming the body, so it was not embalmed, but placed in refrigeration sometime Friday afternoon. The funeral home immediately attempted to locate a pathologist who would perform the autopsy for Travelers, but was unable to find one. They then notified appellants that they had been unsuccessful in getting an autopsy and that it would now be Travelers' responsibility to see that one was performed if they wanted one.

Appellant Ray called the Washington County Coroner's office several times over the next few days, again requesting that the county perform an autopsy. When told that an autopsy was not necessary in every case, and specifically not in this case, he suggested that the coroner was not doing his job. Although Ray had not spoken to any of the Smith family members, he led the coroner to believe that he was expressing the desire of the family to have an autopsy, and told him that an autopsy was required in order for the family to bury Mr. Smith.

Appellees contacted Mr. Smith's attorney, Phillip Moon, who attempted to facilitate the funeral arrangements. On Friday, Moon was told by Ray that the condition for benefits being paid would be an autopsy, notwithstanding that the embalming could not take place and the funeral could not proceed without the approval of appellants. Ray continued to refuse to authorize the embalming of the body even after he was notified that Mrs. Smith had consented to the autopsy. On Monday, when the situation

was still not resolved, Moon attempted to contact Ray's superiors at Travelers without response. Ray could not be reached Monday or Tuesday, being either out of the office or on vacation. Eventually Moon handed the problem back to the funeral home. On Wednesday, when the funeral home contacted Ray, he continued to insist that any action be postponed, stating that Travelers would not pay for the funeral unless there was an autopsy done. Unfortunately, neither Ray nor Travelers took any steps to see that an autopsy was performed; rather, as the funeral home director testified, Ray indicated that he expected someone else to see that the procedure was done.

The funeral home then got in touch with a Traveler's field representative in Oklahoma City who later authorized the burial of Mr. Smith. The embalming of the body did not begin until Wednesday afternoon, some five days following the death. Because of the delay in the embalming process and the deterioration of the body, the body was not deemed presentable for an open casket funeral. There was no visitation at the funeral home to view the body, and the funeral expenses included refrigeration charges for keeping the body for five additional days prior to embalming. The funeral was finally held on Friday, one week following Mr. Smith's death. Travelers ultimately did pay for six thousand dollars of the funeral expenses, as well as widow's benefits to Mrs. Smith under the Workers' Compensation Act. No autopsy was ever performed on the body.

Mrs. Smith and her two stepdaughters brought suit against the insurance company and the adjuster alleging the tort of outrage, or intentional infliction of emotional distress. The jury returned a verdict for the Smith family, awarding damages to each woman of $20,000.00 for outrage, and $125,000.00 for punitive damages, as well as $87.50 each awarded to Mrs. Smith and Ms McKibben for deceit. Travelers Insurance and Dan Ray, jointly and severally liable for these amounts, bring this appeal, raising three points of error. They allege first that there was no substantial evidence to support the jury's findings that they committed the tort of outrage, specifically because any contact by Travelers or Dan Ray was with the funeral home and the attorney, rather than directly with the Smith family; that the trial court erred in

instructing the jury that any statement made by Ray to the funeral home should be treated as having been made to the Smith family; and that the trial court erred in allowing the introduction of an inter-office memorandum authored by Ray's supervisor concerning his lack of candor with regard to investigation of another claim.

*Substantial Evidence to Support the Jury's Verdict*

■ ■     Appellants argue on their first point that the trial court erred in failing to direct a verdict in their favor because there was no substantial evidence to support the jury's conclusion that appellants committed the tort of outrage. To determine whether sufficient evidence exists to support a judgement in tort-of-outrage cases, we assess whether the evidence is substantial, and, in doing so, consider it in the light most favorable to the appellee. *Croom v. Younts,* 323 Ark. 95, 913 S.W.2d 283 (1996). Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another, forcing or inducing the mind to pass beyond mere suspicion or conjecture. *Id.* It is well-established that in reviewing a motion for a directed verdict, the evidence must be examined most favorably to the party against whom the verdict is directed, including all reasonable inferences that could be drawn from the evidence, and if any substantial evidence exists tending to establish an issue of fact in favor of that party, it is error for the court to take the case from the jury. *Ikani v. Bennett,* 284 Ark. 409, 682 S.W.2d 747 (1985); *Page v. Boyd-Bilt, Inc.,* 246 Ark. 352, 438 S.W.2d 307 (1969).

■     What constitutes willful or wanton conduct for the tort of outrage is defined under Arkansas Model Instruction 404: "A person acts willfully and wantonly when he knows or should know in the light of surrounding circumstances that his conduct will naturally and probably result in emotional distress and continues such conduct in reckless disregard of the consequences." AMI Civ. 3d 404. Extreme and outrageous conduct is also defined under AMI 404: "By extreme and outrageous conduct, I mean conduct that is so outrageous in character, and so extreme in degree, as to go beyond all beyond possible bounds of decency,

and to be regarded as atrocious and utterly intolerable in a civilized society." *Croom v. Younts, supra.*

■ We have taken a strict approach to this cause of action. Recognition of the tort of outrage should not and does not open the doors of the courts to every slight insult or indignity one must endure in life. *Tandy Corp. v. Bone*, 283 Ark. 399, 687 S.W.2d 312 (1984). This court has repeatedly stated that we require clear-cut proof to establish the elements in tort-of-outrage cases. Clear-cut proof, however, does not mean proof greater that a preponderance of the evidence. We have also stated that we take a strict approach and give a narrow view to the tort of outrage. Hence, in considering whether evidence is sufficient in tort-of-outrage cases, we must determine whether it is substantial in light of those standards. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996). The definition of the tort-of-outrage includes willful and wanton conduct which embraces activity in which a person knows or should know in light of surrounding circumstances that his actions will naturally and probably result in emotional distress. *Id.*

■ ■ A quasi-property right in dead bodies vests in the nearest relatives of the deceased, arising out of their duty to bury their dead. 22A AM. JUR. 2D *Dead Bodies* § 3 (1988). *See also Neff v. St. Paul Fire & Marine Ins. Co.*, 304 Ark. 18, 799 S.W.2d 795 (1990). This right corresponds in extent to the duty from which it arises, and may include rights to possession and custody of the body for burial, to prevent the corpse from disturbances after burial, or to remove it to a proper place. Courts have generally based civil liability for wrongful acts with regard to a dead body on the interference with the right of burial. *Id.* Further, courts have recognized that there is a right to a decent burial which is guarded by the law, corresponding to the common law duty to bury one's dead in order to maintain public health and decency. *Id.* at § 13. Courts have, to a great extent, based civil liability for wrongful acts with regard to a dead body on the interference with the right of burial, recognizing that interference with the rights of person to bury the body of her spouse or kin is an actionable wrong, whether by mutilation of the body after death, the withholding of the body, or the conveyance of a communication which delays the person so entitled. *Id.* at § 35. *See also Geyer v. Western Union*

*Telegraph Co.,* 192 Ark. 578, 93 S.W.2d 660 (1936)(permitting recovery of damages under Arkansas law for appellee's negligent act of altering telegraph message and thereby causing appellant to miss her brother's funeral). The rights to possession, custody, and control of the body for the purpose of burial are within the protection of the law, and a willful violator of such rights may become liable for damages. 22A AM. JUR. 2D *Dead Bodies* § 35 (1988). The Restatement of Torts takes the view that one who intentionally, recklessly, or negligently withholds the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body. RESTATEMENT (SECOND) OF TORTS § 868.

We have previously addressed the sanctity of a family's right to bury its deceased in *Growth Properties I v. Cannon,* 282 Ark. 472, 669 S.W.2d 447 (1984), where we found the evidence sufficient to support the tort of outrage where the appellants drove heavy equipment across the grave sites of members of the appellees' family, exposing the vaults, to the distress of the family members. We wrote: "The grounds where close family members — wives, parents, children — lie buried have a special place in the minds and sentiments of men and women of every race and culture. They are places to be preserved from the erosions of time and nature, if possible, and certainly from the wanton desecration of those who have entered into a covenant to keep them perpetually protected." *Growth Properties I, supra.*

The testimony of the funeral home employees presented at trial was that the delay in the funeral process was very difficult for Mrs. Smith and Ms. McKibben, who had taken responsibility for planning the service, resulting in an observable effect and deepening their grief. Further, if the funeral had not been delayed, the family would not have incurred refrigeration charges. The funeral home directors testified that, notwithstanding the family's acquiescence, Travelers did not take any steps toward obtaining an autopsy. The testimony of one director who spoke with Ray described him as "about the most cruel person I ever talked to in regards to a family that has gone through a death, uncaring and

did not seem to have any concern whatsoever for a family that really needed help at that time."

If the body had been embalmed within six to ten hours of death, as is standard, it would have been presentable for an open casket funeral, and the fact that it was not presentable was directly attributable to the delay. Furthermore, due to the circumstances and the delay, the family was not able to have a visitation period for family and friends at the funeral home, a process believed to aid the grieving family. The family's attorney, Phillip Moon, testified that Ray was "indifferent to the grief it was causing the family in having this [the funeral] delayed. He showed no real concern."

Ray did not work on the case on Saturday or Sunday, and took no steps to obtain an autopsy on Monday. He claimed that once attorney Moon got involved, he backed off and felt that he was prohibited from talking to the widow. Ray further testified that he took no steps on Tuesday or Wednesday to get an autopsy, thinking that Moon would take care of arranging an autopsy. He denied telling the funeral home that Travelers would not pay for the funeral unless there was an autopsy.

Sue Ellen Smith and Roseann McKibben each testified about their relationship with their father and the grief that they suffered, exacerbated by the delay in having the funeral. Miss Smith, who acknowledged mental health problems, testified that she continues to be in denial about her father's death and believes that having seen her father in his casket would have alleviated some of that denial. Both daughters wanted and expected an open casket funeral and wanted to say their farewells to their father in that way. They testified that they could not understand the reason for the delay in the funeral and this delay caused additional emotional distress to them, above and beyond the suffering from the death itself.

Mrs. Smith testified to having nightmares at the thought of her husband remaining on refrigeration at the funeral home, wondering what sort of condition his body was in, and would wake up nights crying. Mrs. Smith finally viewed the body the following Thursday, and testified that the results were not as she remembered her husband.

■ Mindful of the importance in which our society and the common law has held the family's right to bury their dead, and the civil liability imposed for the wrongful interference with that right, we hold that the trial court did not err in denying a directed verdict. There was substantial evidence to support the jury's verdict that appellants should have known that their actions would cause deep and severe emotional distress to appellees, and that they acted in reckless disregard of that fact. Although Travelers had the legal right to investigate the claim, and, if necessary, request an autopsy, substantial evidence supports the jury's conclusion that appellants committed the tort of outrage by failing to promptly obtain an autopsy after obtaining Mrs. Smith's consent, effectively holding Mr. Smith's body hostage, hindering the embalming of the body and delaying not only the funeral, but also the family's grieving process. Furthermore, appellants knew or should have known that it was their responsibility to order and pay for an autopsy if they desired one. The delay in the embalming process, the family's inability to have a visitation or an open-casket funeral, and the week long wait for the funeral were the direct result of appellants' procrastination. Here, the jury determined that appellants' conduct was intolerable and we cannot say the supporting evidence was not sufficient to constitute the tort of outrage, in view of the deep human feelings involved. *Growth Properties I v. Cannon*, 282 Ark. 472, 669 S.W.2d 447 (1984).

■ Appellants argue in their appeal that they cannot be liable for the tort of outrage because any contact with the family was through attorney Moon and the funeral home, so that no conduct, no matter how outrageous, was directly with appellees. We have previously held that outrageous conduct need not be in the presence of those thus affected, as in the *Growth Properties* case cited above. There we held that the actions of the appellants in driving heavy machinery over the appellees' family's graves, exposing the vaults, was actionable notwithstanding that much of the work occurred outside the presence of the family. Appellants' argument confuses the intent to cause suffering with the intent to do an act from which suffering can be expected to result. The former may be maliciously intended while the latter may be merely the result of a conscious indifference to the consequences. But even the lat-

ter, if sufficiently wanton, will sustain the award. *Growth Properties, supra.*

▪ Along those lines, we held that substantial evidence supported the verdict of outrageous conduct and the award of compensatory and punitive damages in the case *Hess v. Treece*, 286 Ark. 434, 693 S.W.2d 792 (1985), where Board of Directors member Hess instigated a two-year course of conduct aimed at police officer Treece by complaining about him to his superiors, having him followed, making allegations about him to a newspaper writer, and telling others that he would get Treece fired. Hess argued that his actions were not the proximate cause of any emotional distress suffered by Treece. We wrote: "There was ample evidence to show that Hess was the moving force behind the repeated police investigations of Treece, and the fact that there was little face-to-face contact between the two men does not prevent a finding of proximate cause." *Hess v. Treece, supra.* Here, the evidence was sufficient to show that appellants knew, or should have known, that their course of conduct would naturally and probably result in severe emotional distress to the Smith family, and the fact that appellants' conversations were with the Smiths's agents rather than directly with the grieving family is insufficient to insulate them from liability for the consequences of their actions.

▪ We need not discuss in detail the evidence presented by appellants to excuse their behavior. Such evidence addressed itself to the jury's role as the finder of fact, and any issue would relate to the credibility of the evidence. Because there was substantial evidence to support the jury's verdict finding the tort of outrage, we affirm the trial court's action in denying a motion for directed verdict and later, for denying appellants' request for a judgment notwithstanding the verdict.

### Jury Instruction

Appellants's second point on appeal concerns an instruction to the jury by the trial court regarding the agency relationship between the Smith family and the funeral home. At appellants' request, the court gave the jury the following instruction:

You are instructed that the actions, statements and representations of Sisco Funeral Chapel, Inc., its agents and employees, or those of Phillip Moon, may not be imputed to The Travelers or Dan Ray and The Travelers or Dan Ray are not responsible for any damages or injury caused by such actions, statements, or representations.

Appellants objected, however, to the following jury instruction which the court added to follow the above instruction:

Sisco Funeral Chapel was the agent of Anna Smith and Roseann McKibben and was subject to their control.

Any statement made by Dan Ray and/or Travelers Insurance to Sisco Funeral Chapel you should treat as being made to Anna Smith and Roseann McKibben.

Appellants argue that this second instruction was erroneous and required the jury to consider that Ray spoke to appellees in the same manner, choosing the same words and with the same tone and inflection he used in speaking to the funeral home, even though Ray did not actually speak directly to appellees. Appellants' contention is without merit, because the outrageous conduct was not the tone or inflection of Ray's conversation with the family's agent; the outrageous conduct was in not promptly obtaining an autopsy once appellants were given the authority to do so. Appellants' conduct resulted in Mr. Smith's body remaining in refrigeration for days on end while they took no action on the claim. Appellants do not contest that the funeral home was authorized to act as the agent of the Smith family, and it should have been clear to appellants that their actions or inaction would impact the family, the injured parties who brought this suit. We are not persuaded that it was error for the trial court to have so instructed the jury, and affirm on this point as well.

### Introduction of the Interoffice Memo

For their final claim of error, appellants contest the trial court's permitting the introduction of an interoffice memorandum contained in Ray's personnel file. On direct examination, Polly Sweet, Ray's supervisor was asked, "It's a fact, is it not, that Travelers Insurance believes that on occasions Dan Ray has misrepre-

sented his actions in dealing with claims?" She responded, "I don't believe that's correct." At that point, appellees sought to introduce a memo dated October 3, 1994, in which Ray Pickens, manager of Travelers' Oklahoma City claims department, documented his investigation of a letter sent by Dan Ray to an insured employer regarding Travelers' position on carpal tunnel syndrome claims made by their employees. At a meeting regarding this letter, "Dan offered explanations which were subsequently contradicted by Supervisor Polly Sweet, Engineering Representative Mark Hyams, and the account. My follow-up investigation convinced me that Dan mis-represented the facts in his responses in the meeting."

Appellants argue on appeal that not only is this evidence more prejudicial than probative, but also that it is inadmissible under Rule 608(b) of the Arkansas Rules of Evidence. Neither of these arguments was made below and thus we are precluded from addressing them appeal, as appellants are not permitted to change the basis of their objection on appeal. *Walker v. State*, 301 Ark. 218, 783 S.W.2d 44 (1990). Appellants contend in their responsive brief that this issue was raised in their motion for a new trial and judgment notwithstanding the verdict, but we are unable to verify that contention because, while the motion is abstracted, it makes no mention of Rule 608(b) and does not preserve the arguments now advanced on appeal. The issue must have been brought to the attention of the trial court for a ruling during trial or at some point prior to the entry of final judgment. *Stewart v. Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992). As for the trial court's decision regarding relevancy, we recognize that the trial court's findings are entitled to great weight. We will not reverse a ruling on relevancy unless we find an abuse of the trial court's discretion in the matter. *Dixon v. State*, 311 Ark. 613, 846 S.W.2d 170 (1993). The balancing of probative value against prejudice is a matter left to the sound discretion of the trial judge, and his decision on such a matter will not be reversed absent a manifest abuse of that discretion. *Bohannon v. State*, 324 Ark. 158, 919 S.W.2d 198 (1996). Here, Travelers' representative, Polly Sweet, denied that the company had ever previously thought that Ray had misrepresented his actions with regard to claims he has han-

dled. When she did so, she opened the door to impeachment by a prior inconsistent statement under Arkansas Rules of Evidence Rule 613, and the trial court correctly permitted the introduction of the memo for the purpose of assessing Ray's credibility.

We conclude that the trial court did not err in denying appellants' motion for a directed verdict or a judgment notwithstanding the verdict, in instructing the jury on the agency issue, or in allowing the introduction of the interoffice memorandum. Accordingly, we affirm the decision of the trial court.

Affirmed.

GLAZE and IMBER, JJ., concur.

TOM GLAZE, Justice, concurring in part. I agree with the majority opinion but concur on the reasoning given for sustaining the trial court's ruling permitting the introduction of the Travelers Insurance Company memo. The majority correctly concludes appellants Travelers Insurance Company and Dan Ray failed to preserve the evidentiary Rule 608(b) argument the appellants attempt to raise on appeal. As to whether the trial court abused its discretion in ruling the memo was relevant and therefore admissible, I believe the memo was relevant under Ark. R. Evid. Rule 404(b) to show Travelers had knowledge of Ray's past misrepresentations. I do not join in this court's Ark. R. Evid. Rule 613 discussion regarding Ray's credibility, which I fail to find in either the appellants' or appellees' briefs.

IMBER, J., joins this opinion.