Carl CROCKETT, Monica Crockett, and Michael Crockett *v.* Stewart ESSEX and Turpin Funeral Home, Inc.

00-136                                                    19 S.W.3d 585

Supreme Court of Arkansas
Opinion delivered June 8, 2000

*Russell Rogers,* Judge;

*Gary Eubanks & Associates,* by: *James Gerard Schulze* and *J. Todd Jones,* for appellants.

*Kemp, Duckett Spradley, Curry & Arnold,* by: *James M. Duckett,* for appellees.

ROBERT L. BROWN, Justice. This appeal is from an order granting summary judgment in favor of the appellees, Stewart Essex and Turpin Funeral Home. The appellants, Carl Crockett, Monica Crockett, and Michael Crockett ("the Crock-etts"), who were the plaintiffs before the trial court, contended in their direct appeal that the trial court erred in granting summary judgment in favor of Essex and the funeral home. The court of appeals in a four-to-two decision agreed that the trial court's summary judgment order should be reversed. *Crockett v. Essex,* 69 Ark. App. 45, 9 S.W.3d 561 (2000). Essex and the funeral home petitioned this court for review pursuant to Ark. Sup. Ct. R. 2-4(c), and we granted the petition. When we grant a petition for review, we consider the matter as if the appeal had originally been filed in this court. *See Martin v. Arthur,* 339 Ark. 149, 3 S.W.3d 684 (1999); *Myrick v. Myrick,* 339 Ark. 1, 2 S.W.3d 60 (1999). We affirm the trial court and reverse the court of appeals.

On August 19, 1997, Dorothy Lee Baker Crockett died in Arkansas County. She was the wife of Carl Crockett and the mother of Monica and Michael Crockett. Carl Crockett contracted with Turpin Funeral Home in Stuttgart to provide funeral and burial services. Stewart Essex is the funeral director of Turpin Funeral Home. On August 21, 1997, the funeral service for Dorothy Crockett took place at the funeral home, followed by her burial.

On January 2, 1998, the Crocketts filed a second amended complaint against Essex and the funeral home. In that complaint, they alleged the following conduct by the defendants in connection with Dorothy Crockett's funeral:

- that Essex had urged participants to hurry and shorten the funeral service at the funeral home;

- that Essex hurried the hearse to the gravesite, leaving some mourners who would have been in the funeral procession behind and driving in excess of sixty-five miles per hour;

- that Essex and the employees and agents of the funeral home acted annoyed and hurried the burial service;

- that Essex, in an attempt to speed up the burial, put a disabled family member in another family member's car and drove the vehicle over graves and grave stones; and

- that during the burial service, Essex got in his car and talked on his cellular telephone for an extended period of time.

The Crocketts claimed that these were negligent and intentional acts committed by Essex and the funeral home which were extreme and outrageous and resulted in emotional distress. They further claimed that the acts constituted a willful breach of contract. The Crocketts prayed for compensatory and punitive damages. Next, the Crocketts propounded interrogatories to Essex, which he answered under oath. According to the supplemental abstract filed by the appellees in this case, Essex gave the following answers:

*INTERROGATORY NO. 22:* Were you operating the hearse from Turpin Funeral Home to the Crockett gravesite on 8/21/97? If so, please state:

(a) Your best estimate of the top speed the hearse attained on the way to the Crockett gravesite?

(b) Whether the procession behind the hearse was orderly?

(c) The approximate distance between Turpin Funeral Home and the Crockett gravesite.

*ANSWER:* Yes.

(a) We try to maintain highway speed so not to interfere with other traffic.

(b) As far as I could tell.

(c) Twenty–Five (25) miles.

*INTERROGATORY NO. 23*: What is your best estimate of the time that elapsed between the time the Crockett service at Turpin Funeral Home ended and when the hearse departed for the gravesite?

*ANSWER*: Thirty (30) minutes.

Essex and the funeral home moved for summary judgment on the basis that the Crocketts had failed to establish any of their asserted causes of action, and they asked for dismissal of the complaint. Following arguments by counsel, the trial court entered an order granting the appellees' motion for summary judgment.

In their appeal, the Crocketts claim that the trial court erred in granting summary judgment because their complaint did state a cause of action for the tort of outrage. We begin by observing that counsel for the Crocketts waived any argument concerning breach of contract at the hearing before the trial court. We further observe that no argument regarding a negligence claim is made in this appeal, and we conclude that the Crocketts have abandoned any claim that summary judgment was erroneously granted for that cause of action as well. We, thus, consider the Crocketts' contention that their outrage claim should have survived a grant of summary judgment as their sole ground for reversal.

■■ In this connection, the Crocketts maintain that the trial court granted a dismissal in its order because that is what the appellees asked for in their motion. Dismissal, they point out, is generally associated with a motion under Rule 12(b) of the Arkansas Rules of Civil Procedure. We disagree with the Crocketts' argument. The motion in this matter was styled as one for summary judgment, and the motion asserted that the Crocketts had failed to *establish* any of their causes of action; not that they had failed to state a claim for relief. In addition, we presume that the trial court considered matters outside the pleadings, such as Essex's answers to interrogatories, unless the court specifically excluded them. *Martin v. Arthur, supra*; *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). Consideration of matters outside the pleadings would convert a motion to dismiss into one for summary judgment in any event. *Id.* We conclude, accordingly, that the motion and subsequent order are for summary judgment, even though the motion sought "dismissal" of the Crocketts' complaint.

█ In the case of *Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997), this court set forth our standards of review for summary judgment appeals:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law.
>
> *Renfro v. Adkins*, 323 Ark. 288, 295, 914 S.W.2d 306, 309-10 (1996) (internal citations omitted); *Cash v. Lim*, 322 Ark. 359, 360-62, 908 S.W.2d 655, 656-57 (1995); *Oglesby v. Baptist Medical Sys.*, 319 Ark. 280, 284, 891 S.W.2d 48, 50 (1995). Once a moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must demonstrate a genuine issue of material fact by meeting proof with proof. *Renfro v. Adkins, supra.*

*Milam*, 327 Ark. at 261-262, 937 S.W.2d at 656. Furthermore, the moving party may present pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, to support the burden of showing entitlement to summary judgment as a matter of law. *See Stockton v. Sentry Ins.*, 337 Ark. 507, 989 S.W.2d 914 (1999); see also Ark. R. Civ. P. 56 (2000).

█ We turn then to the merits of this appeal and begin with a discussion of our caselaw relating to the tort of outrage. Two years ago, we described the elements of a tort-of-outrage claim:

> To establish an outrage claim, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Angle v.*

*Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997). The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. *Hollomon v. Keadle*, 326 Ark. 168, 931 S.W.2d 413 (1996). This court gives a narrow view to the tort of outrage, and requires clear-cut proof to establish the elements in outrage cases. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996). Merely describing the conduct as outrageous does not make it so. *Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996). Clear-cut proof, however, does not mean proof greater than a preponderance of the evidence. *Croom*, 323 Ark. 95, 913 S.W.2d 283.

*McQuay v. Guntharp*, 331 Ark. 466, 470-471, 963 S.W.2d 583, 585 (1998). We have taken a strict approach in determining the validity of outrage cases, and recognized that "the tort of outrage should not and does not open the doors of the courts to every slight insult or indignity one must endure in life." *Travelers Ins. Co. v. Smith*, 338 Ark. 81, 89, 991 S.W.2d 591 (1999), *citing Tandy Corp. v. Bone*, 283 Ark. 399, 405, 678 S.W.2d 312, 315 (1984).

Three of our outrage cases which deal with death appear especially pertinent to the instant case. They are: *Travelers Ins. Co. v. Smith, supra; Neff v. St. Paul Fire and Marine Ins. Co.*, 304 Ark. 18, 799 S.W.2d 795 (1990); and *Growth Properties I v. Cannon*, 282 Ark. 472, 669 S.W.2d 447 (1984). In *Travelers*, the burial of the deceased was delayed by the insurance company's failure to move with dispatch to have the requested autopsy performed. Due to this delay, the body was not embalmed, and it deteriorated to such an extent that the family could not have an open casket at the funeral. The family members reported that the delay in burial had caused extreme emotional distress, including anxiety over the lost chance to say farewell to their father and nightmares.

In our decision in *Travelers*, we recognized that a quasi-property right in dead bodies vests in the nearest relatives of the deceased and that the rights to possession, custody, and control of the body for purposes of burial are within the protection of the law. We noted in our decision that courts have recognized that there is a right to a decent burial, corresponding to the common-law right to bury one's dead in order to maintain public health and human decency. Mindful of the importance in which our society and the common law have held the family's right to bury their dead, and the civil liability imposed for the wrongful interference with that

right, we held that the trial court correctly denied a directed verdict in favor of the insurance company on the outrage claim.

The second case that bears mention is *Growth Properties I v. Cannon, supra*, where we affirmed compensatory and punitive damages for the tort of outrage. In that case, the cemetery owners constructed a french drain and in the process drove heavy equipment across several gravesites, which exposed the vaults of the plaintiffs' deceased relatives. When the family members complained, one employee for the contractor countered that they should not return to the cemetery until the work was completed. We affirmed the damages awarded and emphasized that the construction company had alternative means to accomplish the drainage project which would not have involved desecration of the graves.

Finally, there is the case of *Neff v. St. Paul Fire and Marine Ins. Co., supra*. In *Neff*, a mother gave birth at a Fayetteville hospital to a stillborn fetus. The hospital released the fetus to the husband and father, who later that evening was arrested for DWI in Huntsville in the next county. Both the husband and the fetus were placed in the county jail. When the mother complained, a hospital employee told her that she could go to Huntsville to claim the fetus. We held that this activity by the hospital did not constitute the tort of outrage. We stated that the hospital had the right to release the remains to the husband-father, who was more at fault in his conduct than the hospital. We affirmed the grant of summary judgment in favor of the insurance carrier for the hospital.

The allegations in the case before us are that the funeral service and burial orchestrated by Essex and the funeral home were conducted in a hurried manner, that the hearse was driven too fast to the grave, that a disabled family member was taken by car over the graves of unknown persons, and that Essex talked on a cellular phone in his car for a prolonged period of time during the burial. The answers to interrogatories submitted by Essex contain an explanation for the speed maintained by the driver of the hearse. He explained that the funeral home tried to maintain highway speed so as not to interfere with other traffic; that as far as he could tell the procession behind the hearse was orderly; that it was about twenty-five miles from the funeral home to the grave site; and that the hearse did not leave the funeral home until thirty minutes after the

service. The Crocketts presented no proof to refute Essex's answers to interrogatories, which were submitted under oath.

■ While the conduct of the funeral home and Essex as its director may have been rude and illustrative of a lack of professionalism, we cannot say that the conduct was so extreme and outrageous as to be beyond all possible bounds of decency, and to be utterly intolerable in a civilized society. The body was not mishandled as was the case in *Travelers Ins. Co. v. Smith, supra.* Nor were the graves of deceased family members desecrated, which occurred in *Growth Properties I v. Cannon, supra.* We do acknowledge that family members of a deceased person are understandably more sensitive and vulnerable following the death of a close relative, rendering them more susceptible to outrageous conduct. But the facts asserted in this case simply cannot support an action for outrage.

Affirmed.