MECHANICS LUMBER COMPANY and Fred Myers Company, Inc. *v.* Mark SMITH

87-358                                             752 S.W.2d 763

Supreme Court of Arkansas
Opinion delivered July 18, 1988
[Rehearing denied September 19, 1988.*]

*Holt, C.J., and Newbern, J., not participating.

*Eichenbaum, Scott, Miller, Liles & Heister*, by: *Randel K. Miller*; and *Anderson & Kilpatrick*, by: *Overton S. Anderson*, for appellant Mechanics Lumber Company.

*Huckabay, Munson, Rowlett, and Tilley, P.A.*, by: *Beverly A. Rowlett*, for appellant/cross-appellee Fred Myers Company, Inc.

*Lavey, Harmon & Burnett*, by: *John L. Burnett*, for appellee/cross-appellant.

MEREDITH P. CATLETT, Special Chief Justice. This case involves a polygraph examination administered to Appellee, Mark Smith, for his employer Appellant, Mechanics Lumber Company, by Appellant, Fred Myers Company, Inc. Smith sued on three bases: outrage, negligence in administering the polygraph and defamation. The trial court denied Appellants' motions for a directed verdict on the claim of outrage and the jury awarded a verdict against Mechanics and Myers on this claim. The trial court granted summary judgment for Appellants on the other claims. These rulings have been appealed.

Due to losses of merchandise, Mechanics scheduled polygraph examinations for several employees including Appellee. Mechanics was aware that Appellee suffered from Multiple Sclerosis but was not aware that Appellee's disease was in an aggravated stage. Immediately before taking the exam Appellee signed a form consenting to the test and releasing Mechanics and Myers from all claims, but he alleges he believed his job would be terminated if he did not sign the form and take the polygraph.

Appellee informed the polygraph administrator, Myers' employee, that he had Multiple Sclerosis and was taking the drug Prednisone. The administrator said he would later determine whether the medicine could affect the polygraph. Appellee did not object to undergoing the examination. He testified that the experience of taking the exam did not exacerbate his disease but that he became worse after he learned of the results.

Myers reported to Mechanics that the polygraph revealed that Appellee had been deceptive during the examination. Mechanics informed Appellee of the results but told him the results were questioned because of the uncertain effect of his illness and medication. Another exam was scheduled for the next day. Mechanics contacted Appellee's physician to determine whether Appellee was physically fit for another polygraph. Based on the physician's advice that Appellee should not take the test at that time, Mechanics cancelled the exam.

After the test was cancelled, Appellee left work early and did not return for two weeks due to an aggravated stage of his disease.

After returning to work for a month, Mechanics told Appellee he was being discharged because he was physically unfit for his duties. Mechanics also told Appellee that his physician told Mechanics that Appellee was unable to perform his job functions, but the physician denied so advising Mechanics.

The first issue is whether the evidence is sufficient to support the tort of outrage. The trial court denied Appellants' motions for a directed verdict, holding the evidence was sufficient. This claim went to the jury which awarded damages to Appellee against Mechanics and Myers.

In *M.B.M. Co.* v. *Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980), this court first recognized the tort and held there must be conduct that "is so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Counce, supra*, at 687. While this court has recognized the type of conduct must be decided on a case by case basis, the strict standard of *Counce* has remained. *Ingram* v. *Pirelli Cable Corp.*, 295 Ark. 154, 747 S.W.2d 103 (1988).

Conduct not otherwise outrageous and extreme can be elevated to satisfy the test if the employer knows of an employee's inability to deal with emotional stress. *Tandy Corp.* v. *Bone*, 283 Ark. 399, 678 S.W. 2d 312 (1984) and *Ingram, supra*. There is no evidence in the instant case that Appellants knew or should have known that Appellee's disease could worsen by taking the polygraph. In fact, Appellee testified the exam did not result in an exacerbation of his disease. Merely scheduling a second exam did not constitute outrageous conduct by Mechanics.

In determining on appeal the correctness of the trial court's action concerning a motion for a directed verdict by either party, we view the evidence that is most favorable to the party against whom the verdict is sought and give it the highest probative value, taking into account all reasonable inferences deducible from it. The motion should be granted only if the evidence so viewed would be so insubstantial as to require a jury verdict for the party to be set aside. *Green* v. *Gowan*, 279 Ark. 382, 652 S.W.2d 624 (1983); *Pritchard* v. *Times Southwest Broadcasting, Inc.*, 277 Ark. 458, 642 S.W.2d 877 (1982). This court finds no evidence which would raise the level of Mechanics'

or Myers' conduct to the standard required for the tort of outrage. Therefore, we reverse the denial of Appellants' motions for directed verdict.

Appellee sought damages alleging negligence by Myers in administering and reporting the polygraph. The trial court granted summary judgment for Myers based on the release contained in the consent form Appellee signed.

We agree with Appellee that the validity of the consent form presented a fact question for the jury. For the consent to be valid it must be executed freely with full knowledge and free of duress. *Interstate Fire Ins. Co.* v. *Ford*, 234 Ark. 104, 350 S.W.2d 687 (1961); *Perkins Oil Co. of Delaware* v. *Fitzgerald*, 197 Ark. 14, 121 S.W.2d 877 (1938).

Myers is right that a claim of negligent infliction of emotional distress is not recognized in Arkansas, *Dalrymple* v. *Fields*, 276 Ark. 185, 633 S.W.2d 362 (1982), and that intentional conduct is required to support a claim for interference with prospective advantage. *Scholtes* v. *Signal Delivery Service*, 548 F. Supp. 487 (W.D. Ark. 1982). But there is more to Appellee's negligence claim requiring a decision about the validity of the consent form. Therefore we reverse the summary judgment on this claim and remand.

The trial court granted a summary judgment for Myers on Appellee's claim for defamation holding the publication of the polygraph report to Mechanics was privileged.

We do not decide whether a privilege exists in this situation because the issues were not developed at trial. If such a privilege exists, fact questions precluded a summary judgment in this case. To establish an absolute privilege the consent form must be valid. *Interstate, supra*, and *Perkins, supra*. To establish a qualified privilege, the reasonableness of Myers' actions must be established. *Dunn & Bradstreet, Inc.* v. *Robinson*, 233 Ark. 168, 345 S.W.2d 34 (1961). Therefore, if either type of privilege were to exist, the summary judgment precluded development of the facts so we reverse and remand.

Reversed on appeal and reversed and remanded on cross-appeal.

HOLT, C.J., NEWBERN and PURTLE, JJ., not participating.

Special Associate Justice Al Graves, Jr., joins in the opinion.