Janet S. NEFF *v.* ST. PAUL FIRE & MARINE INSURANCE CO.

90-125                                                        799 S.W.2d 795

Supreme Court of Arkansas
Opinion delivered December 3, 1990

*Woodruff & Green*, by: *Mary E. Green*, for appellant.

*Davis, Cox & Wright*, by: *Constance G. Clark*, for appellee.

STEELE HAYS, Justice. Appellant Janet Neff brought this damage suit against appellee St. Paul Fire & Marine Insurance Co., insurer of Washington County Regional Medical Center, alleging that by delivering the body of her stillborn fetus to her husband, the hospital had committed a tort of outrage. The trial court held that no cause of action was stated and we agree.

On March 20, 1987, Janet S. Neff, appellant, was admitted to Washington Regional Medical Center with complications in pregnancy. The treating physician, Dr. Harmon Lushbaugh, could detect no fetal heart tones and an ultrasound confirmed there was no fetal heart motion or fetal activity. Labor was induced and appellant passed the fetus and placenta spontaneously. The seventeen-week-old fetus was nonviable.

About 6:00 p.m. on March 21, 1987, the hospital released the fetus to Mrs. Neff's husband, Charles Neff, for burial. Later that evening, Charles Neff was arrested and charged with driving while intoxicated. Both Charles Neff and the fetus were taken into custody by the Madison County sheriff.

Appellant's complaint alleges that next morning Claudette Warren, a registered nurse on the hospital staff, came to see appellant in her room, that Warren told appellant her husband and the fetus were being held in jail in Huntsville and advised appellant to go to Huntsville to retrieve the body. Whether appellant acted on this advice is not disclosed but the baby was buried appropriately on March 22, 1987.[1]

On May 24, 1989, appellant filed suit against appellee, St. Paul Fire & Marine Insurance Company, as the statutory substitute defendant for the hospital. Appellant alleged negligent and intentional infliction of emotional distress. St. Paul moved to dismiss the complaint for failure to state facts upon which relief could be granted, pursuant to ARCP Rule 12(b)(6). The motion was supported by the affidavits of Claudette Warren and Ruby Milligan, the mother of Charles Neff. Appellant responded by submitting her own supporting affidavit. St. Paul submitted the

[1] Charles Neff died on October 31, 1987, from unrelated causes.

affidavit of Dr. Lushbaugh and medical records related to appellant's hospital stay.

St. Paul's motion to dismiss was treated as a motion for summary judgment, ARCP Rule 56. In a letter opinion dated September 27, 1989, the trial court concluded that even assuming the truth of appellant's allegations, the actions of the hospital failed to support a claim for the tort of outrage. Appellant appeals from that order.

The trial court, in its letter opinion, noted initially that Arkansas does not recognize the tort of negligent infliction of emotional distress, citing *Mechanics Lumber Co. v. Smith*, 296 Ark. 285, 752 S.W.2d 763 (1988). Appellant takes no exception to that ruling, but does object to the trial court's denial of her claim of an intentional tort. However, it was proper for the trial court to decide in the first instance whether the conduct of the hospital was so atrocious and outrageous as to permit recovery. *Harris v. Arkansas Book Co.*, 287 Ark. 353, 700 S.W.2d 41 (1985); Restatement (Second) of Torts § 46, Comment h (1965); *Givens v. Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982).

We first recognized the tort of outrage—the intentional infliction of emotional distress—in *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W2d 681 (1980). The conduct complained of must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." While this court has recognized the type of conduct must be decided on a case by case basis, the stringent standard in *Counce* has prevailed. *Mechanics Lumber Co. v. Smith*, 296 Ark. 285, 752 S.W.2d 763 (1988); *Ingram v. Pirelli Cable Corp.*, 295 Ark. 154, 747 S.W.2d 103 (1988).

Appellant's claim of outrage has two aspects. The first is her objection to the hospital releasing the fetal remains to her intoxicated husband; and second, her objection to Nurse Warren's advice that she recover the body from the Madison County sheriff. We believe the trial court was correct in finding no cause of action for the tort of outrage. The hospital did nothing more than it had a right to do under the law—to deliver the fetus to either parent. In fact, a refusal to do so might well have been a breach of duty. Additionally, it simply reported the subsequent

development to the appellant and suggested a course of action she might take. However one chooses to view the unfortunate episode, the emotional distress which it occasioned was brought about primarily by the actions of Mr. Neff rather than by the actions of the hospital.

Appellant argues that the hospital's release of the body to Charles Neff was improper. But we are given no authority for that conclusory allegation. Appellant maintains the hospital should have consulted with her first, particularly in view of her husband's intoxication. We find no statute dealing with the right to possession of a corpse or control of a burial. Under relevant case law it usually belongs to a surviving spouse, then to the next of kin in the order of their relationship to the decedent—children of proper age, parents, brothers and sisters, and so forth. 22A Am. Jur. 2d *Dead Bodies* § 25 (1988). Our holding in *Teasley* v. *Thompson.*, 204 Ark. 959, 165 S.W.2d 940 (1942), is in accord.

In this case, it appears that either parent is entitled to the right of possession, and the only question is whether one is entitled to possession without the consent of the other. Nothing we have found suggests that dual consent is necessary.

As between competing parents, we find no authority requiring the consent of both parents before a body may be released to one of them. In health matters generally, *either* parent's consent is sufficient. For example, in Ark. Code Ann. § 20-9-602 (1987), outlining what consent is necessary for medical treatment, provision for parental consent specifically requires only one parent's consent. Similarly, in Ark. Code Ann. § 20-17-302 (1987), providing for consent to an autopsy, either parent is authorized to consent. And in Ark. Code Ann. § 20-17-603 (1987), consent for organ donations, again *either* parent may consent. [Ark. Code Ann. § 20-17-603(a)(3) (1987).] Under section (d) of that statute, the anatomical gift may be revoked by any member of the listed classes which can give consent, if the physician or surgeon responsible is notified by the revoking party. There is no requirement that a doctor or hospital inquire as to the wishes of the other members of a class under this statute, only that other members of a class have veto power if they notify the party holding the body. Here, the appellant specifically recognizes that the hospital was not on notice that she had objections to the delivery of the body to Charles Neff.

22

■ We must conclude that the hospital had the authority and the right to release the fetus to the father without first obtaining the consent of the mother. This is particularly true where the hospital has merely surrendered physical custody of the remains, absent notice to the contrary.

The Restatement (Second) of Torts § 46 (1965), on the tort of outrage, states specifically in Comment g., that "conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances." The comment continues:

> The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

■ Here, the hospital was doing no more than it had a legal right to do — release the remains to one of the parents, without consulting the other. Even if that conduct could be regarded as improper, it would not equate with outrageous conduct, as defined in the Restatement.

As to the allegation that Charles Neff had been drinking, we have not been shown how that factor would alter his right to physical custody of the remains, nor do we think that would bring the hospital's conduct within the standard announced in *Counce, supra.*

The other component in appellant's claim was the nurse's relaying to her the fact of her husband's arrest for DWI and the advice to her to recover the body. Even by appellant's account, she was not forced to take any steps, the nurse simply advised her to drive to Huntsville, retrieve the fetus and return it to Washington Regional. While the wisdom of the advice could be debated, it was not coercive and appellant does not even claim to have acted on it. Certainly advice of that type, however ill-advised, but undeniably well-intentioned, does not rise to the level of behavior that can be characterized as atrocious, outrageous and intolerable.

We conclude that the trial court quite properly held that a cause of action for the tort of outrage was not stated and, accordingly, we affirm.