The Honorable Sue Madison State Senator 573 Rock Cliff Road Fayetteville, Arkansas 72701-3809
Dear Senator Madison:
I am writing in response to your request for an opinion on several questions regarding unclaimed bodies and a county's authority and responsibility in connection with such bodies. You state that your questions involve an interpretation of Arkansas Constitution, Article 7, Section 28 of the Arkansas Constitution and statutory language related to this provision. You pose four questions regarding this topic, as follows:
 1. Does an Arkansas county court or an Arkansas county judge have the authority to order the cremation of an unclaimed body?
 2. If the answer is "yes," what degree of proof must be offered that the deceased was indeed a pauper and that there is no known next of kin? Does the presentation of such proof have to be offered in the form of an affidavit or verified petition?
 3. What is the potential liability of a county that orders a body to be cremated if they have no authority to do so? What is the potential liability of a county that orders a body cremated and it is later found that family members were not notified?
 4. Is a county responsible for paying for the costs of the cremation?
RESPONSE
The Arkansas Code sets out a procedure to be followed in connection with unclaimed bodies and it involves a search for next of kin and the giving of notice to the Department of Anatomy at the University of Arkansas for Medical Sciences ("UAMS") for possible use of such bodies in anatomical research. Assuming that UAMS does not request delivery of the body, however, or in cases in which such bodies are not suitable for anatomical research, the law specifies that the person having possession, charge, or control of the body shall be notified, and the body shall then be disposed of in accordance with "existing laws, rules, and practices for disposing of unclaimed bodies." The trouble with this statement is that there are currently no other specific laws, rules and practices for disposing of unclaimed bodies. In my opinion, however, in response to your first question, the county court in all likelihood has the authority to enter a judicial order authorizing the cremation of an unclaimed body after following all of the procedures of applicable law, and in cases where the deceased is a "pauper." In response to your second question, the Arkansas Code requires a "diligent search" for the next of kin, which may involve requesting the county sheriff to conduct such search. I have found no requirement that the proof in this regard be offered by affidavit or verified petition. In response to your third question, the potential liability of a county for the actions you describe will depend upon all the applicable facts, taking into account any level of immunity afforded. In response to your fourth question, I can find no provision of law making it the responsibility of a county to pay for such cremations, but in my opinion a county is authorized to do so in the proper exercise of its authority.
Question 1 — Does an Arkansas county court or an Arkansas countyjudge have the authority to order the cremation of an unclaimedbody?
In my opinion, the county court in all likelihood has the authority to enter a judicial order authorizing the cremation of an unclaimed body after following all of the procedures of applicable law, and in cases where the deceased is a "pauper."
Section 20-17-701 to -710 of the Arkansas Code comprises a subchapter entitled "Unclaimed bodies," which was originally adopted in 1959. See Acts 1959, No. 22. The subchapter requires the "person who assumes original and lawful possession, charge or control of any body as described in this subchapter [to] conduct a diligent search for relative or next of kin of the deceased, or that person shall request the county sheriff or such other person as may be required by law to conduct the search." A.C.A. §20-17-702(a). The statute requires the person to make every effort to find the spouse, if any, of the deceased and if it is determined that no spouse exists, then the person must make every effort to find the parents and siblings, if any, of the deceased.Id. If the identity of the deceased is unknown, the investigation shall include the taking and sending of fingerprints to the Federal Bureau of Investigation in Washington D.C. for identification and filing. A.C.A. § 20-17-702(b).
Section 20-17-703 of this subchapter provides that:
 (a) Any person in charge of a prison, morgue, hospital, funeral parlor, or mortuary; any person who is a public officer, agent, or employee of the state, any county, or municipality; and all persons coming into possession, charge, or control of any human body which is unclaimed for burial shall notify the head of the Department of Anatomy, or his designate, as agent for the University of Arkansas for Medical Sciences, that the body, if unclaimed, is available for use in the advancement or study of medical science.
 (b) For the purpose of notifying the University of Arkansas for Medical Sciences of its availability, an "unclaimed body" is defined as a human body in the possession, charge, or control of the persons named in subsection (a) of this section for a period not to exceed forty-eight (48) hours, during which time the right of any relative, next of kin, friend, any representative of a fraternal society of which the deceased was a member, or a representative of any charitable or religious group to claim the body for burial purposes is recognized.
The immediately succeeding provision (§ 20-17-704), provides that "Upon the expiration of the forty-eight hours as provided in §20-17-703, if the dead human body has not been claimed for burial, the person then having possession, charge, or control shall surrender or deliver the body to the University of Arkansas for Medical Sciences, if so requested by it." The person shall not surrender the body, however, if there is proof that the deceased has expressed his desire to be buried or otherwise interred. See A.C.A. § 20-17-705(a). The subchapter sets out the responsibility for the costs of embalming and transportation in the event UAMS determines to accept the body for anatomical research. A.C.A. § 20-17-706. The subchapter also requires UAMS to retain an unclaimed body in a "proper state of preservation" for ninety (90) days after receipt by it. During this time, any relative, next of kin, friend and certain other persons may claim the body for burial at their expense. A.C.A. § 20-17-707(b). If not claimed during the ninety-day period, then all right, title and interest in the body shall be deemed vested in the state for the benefit of UAMS and interested persons shall be deemed to have consented to its use for anatomical research. A.C.A. §20-17-707(d).
Section 20-17-708(a) governs disposition of the body after use for anatomical research. It provides that when a body has been used and deemed of no further value to medical science or study, UAMS shall cause it to be buried or otherwise disposed of according to law. A.C.A. § 20-17-708(a). If the body is deemed unsuitable for anatomical study, subsection (b) of this statute provides that "the person having possession, charge, or control of the body shall be notified, and the body shall then be disposed of in accordance with existing laws, rules, and practices for disposing of unclaimed bodies." A.C.A. §20-17-708(b).
In response to your first question, therefore, in my opinion the procedure set out above must be followed in the case of an unclaimed body. If UAMS accepts the body for research, the applicable subchapter details the procedure that must be followed. If UAMS determines that it does not need the body for anatomical research, or that it is not suitable for research, the person in possession of the body is notified, and "the body is then disposed of in accordance with existing laws, rules, and practices for disposing of unclaimed bodies." A.C.A. §20-17-708(b). This reference is unclear, because, according to my research, there are no other statutory provisions addressing the disposition of unclaimed bodies. As the Arkansas Supreme Court has noted, "We find no statute dealing with the right to possession of a corpse or control of a burial. Under relevant case law it usually belongs to a surviving spouse, then to the next of kin in the order of their relationship to the decedent-children of proper age, parents, brothers and sisters, and so forth. 22A Am. Jur. 2d Dead Bodies 25 (1988)." Neff v.St. Paul Fire Marine Insurance Company, 304 Ark. 18, 21,799 S.W.2d 795 (1990).
Your first question in this regard is whether a county court or county judge has the authority to order the cremation of an unclaimed body. Current Arkansas statutes governing the county court and county judge do not address this power. As a general matter, counties are authorized, through quorum court ordinance, to provide "[c]emetery, burial, and memorial services." See
A.C.A. § 14-14-802(b)(2)(C)(ii)). This power, however, is not addressed specifically to unclaimed bodies where no next of kin is available to make decisions regarding disposition and it does not address any power of the county court or county judge, focusing instead on the legislative power of the quorum court.
You mention Arkansas Constitution, art. 7, § 28 in this regard. It sets the jurisdiction of the county court as follows:
 The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except in cases otherwise herein provided.[1]
You focus on the reference to "paupers" in this section. Section14-14-1105(b)(2) of the Arkansas Code expounds on this jurisdiction by stating that: "Jurisdiction [of the county court] shall include all county administrative actions affecting the conduct of public human services programs serving indigent residents of the county where such services are financed, in total or in part, by county funds." Thus, the "county court" retains jurisdiction over "paupers." Neither article 7, § 28, nor A.C.A. § 14-14-1105(b)(2) address disposition of unclaimed bodies, however. This is in contrast to former law, which made it the duty of the county court "when any nonresident, or any other person coming within the definition of a pauper, shall fall sick and die in any county, not having any money or property to pay his . . . burial expenses" to "make such allowance therefore as shall seem just." See former Ark. Stat. Ann. § 83-308 (Repl. 1976). This former statute was contained in a subchapter addressing "Poorhouses and Poor Relief." As noted in Fuqua, COMMENTS: Bastardy Law in Arkansas — The Need for Revision, 33 Ark. L. Rev. 178:
 Paupers and illegitimates created an interrelated financial burden which seemed best managed at the county level during a time when welfare relief was not a major social phenomenon. Arkansas' system of poor relief was formally repealed in 1977, although it had long since been superseded by public welfare legislation on both the state and federal level.
Id. at 184. The former Arkansas statute making it the county court's duty to make an allowance for the burial of paupers was repealed by Act 742 of 1977. See Acts 1977, No. 742, § 117. No current statute imposes such a duty or mentions any such authority.[2]
Nonetheless, the county court retains jurisdiction over paupers. It may make orders pertaining to "administrative actions affecting the conduct of public human services programs serving indigent residents. . . ." A.C.A. § 14-14-1105(b)(2). To this extent, in my opinion, the county court is a court that may make a judicial order affecting the disposition of an unclaimed body. The making of such judicial orders is mentioned in the first subchapter discussed in this opinion, involving anatomical research at UAMS. The first statute in that subchapter (A.C.A. §20-17-701), provides that:
 None of the provisions of this subchapter shall affect the right of a coroner or a justice of the peace to hold the dead body as described under § 20-17-703 for the purpose of investigating the cause of death, nor shall this subchapter affect the right of any court of competent jurisdiction from entering an order affecting the disposition of the body.
(Emphasis added).
This statute acknowledges the right of a "court of competent jurisdiction" to enter an order affecting the disposition of the body. In my opinion this language would include a county court, in the exercise of its jurisdiction over "paupers," to enter a judicial order regarding the "disposition of the body" of a pauper.[3] Your first question, however, is whether such an order may direct that the body be cremated. This issue is not addressed in A.C.A. §§ 20-17-701 to -710, regarding unclaimed bodies, but it should be noted that references to "disposition" of such bodies in that subchapter are not limited to burial. That subchapter refers to the "disposal" or "disposition" of such bodies "in accordance with existing laws, rules, and practices. . . ." Although I have not found any Arkansas statutes addressing the cremation of unclaimed bodies, another Arkansas statute, A.C.A. § 20-17-102, found in the "Arkansas Final Disposition Rights Act," defines "final disposition" as "the burial, interment, cremation, removal from Arkansas, or other authorized disposition of a dead body or fetus." (Emphasis added). In addition, the Arkansas Board of Embalmers and Funeral Directors is invested with the power to promulgate rules and regulations concerning the licensure of crematoriums. A.C.A. §17-29-207(d). The Board has promulgated extensive regulations governing the cremation of bodies. See Cremation and Transport Service Rules and Regulations. It may be contended, therefore, that cremation is a disposition in accordance with "existing laws, rules and practices" for purposes of A.C.A. § 20-17-708(b).See also generally, 239 Ala. Op. Atty. Gen. 31, 1995 WL 914527; S.C. Inf. Op. Att'y. Gen., 1995 WL 805771 (1995); and 1984-85 Va. Op. Atty. Gen. 144, 1984 WL 184501.
With regard to who may authorize the cremation of a body, A.C.A. § 20-18-604 requires a funeral director or the person so acting to obtain authorization for final disposition of a body as provided in regulations of the Board of Embalmers and Funeral Directors. The following definition of "authorizing agent" appears in those regulations in connection with cremation:
 (A) Authorizing Agent(s). An Authorizing Agent(s) is a person legally entitled to order the cremation of human remains. An authorizing agent shall be the next of kin of the deceased. In the absence of a next of kin, an order from a court of appropriate jurisdiction shall be obtained. In the case of indigents or any other individuals whose final disposition is the responsibility of the state, a public official charged with arranging the final disposition of the deceased, if legally authorized, may serve as the Authorizing Agent. In the case of individuals who have donated their bodies to science, and in which the institution is charged with making arrangements for the final disposition of the deceased, a representative of the institution, if legally authorized, may serve as the Authorizing Agent. If the deceased has authorized their own cremation by a pre-need arrangement, then any person acting on those instructions will be considered legally authorized, unless such authorization is in conflict with the wishes of the deceased's next of kin.
Cremation and Transport Service Rules and Regulations, Section 1(A).
As noted above, in my opinion a county court, acting in a judicial capacity, may order the cremation of the unclaimed body of a "pauper" after all relevant laws have been followed, including the notice to UAMS, and the "diligent search" required under applicable statutes. In cases involving paupers, an order of the county court is an order of "a court of competent jurisdiction" as mentioned in A.C.A. § 20-17-701(a) and as described in the definition of "Authorizing Agent" in the relevant rules.
Question 2 — If the answer it "yes," what degree of proof mustbe offered that the deceased was indeed a pauper and that thereis no known next of kin? Does the presentation of such proof haveto be offered in the form of an affidavit or verified petition?
As noted above, A.C.A. § 20-17-702(a) requires a "diligent search" for the relatives or next of kin of the deceased. The county sheriff may be requested to conduct the search. If the identity of the deceased is not known, the taking and sending of fingerprints to the FBI in Washington, D.C. is required. A.C.A. §20-17-702(b). Presumably the deceased's status as a pauper can be determined by the county court on the basis of the search conducted. The statute does not address the documentation required of this search and I can find no requirement that it be verified by affidavit. I will note, in this regard, however, that Section II (B)(1)(a)(d) of the Cremation Rules and Regulations requires the cremation authorization form signed by the "Authorizing Agent" to contain a "representation that that Authorizing Agent is aware of no objection to the human remains being cremated by any person who has a right to control the disposition of the human remains. . . ."
Question 3 — What is the potential liability of a county thatorders a body to be cremated if they have no authority to do so?What is the potential liability of a county that orders a bodycremated and it is later found that family members were notnotified?
With regard to liability for interference with the right of next of kin to bury a body, the Arkansas Supreme Court has stated that:
 A quasi-property right in dead bodies vests in the nearest relatives of the deceased, arising out of their duty to bury their dead. 22A Am.Jur.2d Dead Bodies § 3 (1988). See also Neff v. St. Paul Fire Marine Ins. Co., 304 Ark. 18, 799 S.W.2d 795 (1990). This right corresponds in extent to the duty from which it arises, and may include rights to possession and custody of the body for burial, to prevent the corpse from disturbances after burial, or to remove it to a proper place. Courts have generally based civil liability for wrongful acts with regard to a dead body on the interference with the right of burial. Id. Further, courts have recognized that there is a right to a decent burial which is guarded by the law, corresponding to the common law duty to bury one's dead in order to maintain public health and decency. Id. at § 13. Courts have, to a great extent, based civil liability for wrongful acts with regard to a dead body on the interference with the right of burial, recognizing that interference with the rights of person to bury the body of her spouse or kin is an actionable wrong, whether by mutilation of the body after death, the withholding of the body, or the conveyance of a communication which delays the person so entitled. Id. at § 35.
* * *
 The rights to possession, custody, and control of the body for the purpose of burial are within the protection of the law, and a willful violator of such rights may become liable for damages. 22A Am.Jur.2d Dead Bodies § 35 (1988). The Restatement of Torts takes the view that one who intentionally, recklessly, or negligently withholds the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body. Restatement (Second) of Torts § 868.
The Travelers Insurance Company v. Smith, 338 Ark. 81, 89-90,991 S.W.2d 591 (1999) (upholding directed verdict in favor of the deceased's family for the tort of "outrage" against an insurance company who caused delay in burial of the deceased).
In addition, Section II ("Cremation Rules and Regulations"), § (F)(1)(a) of the of the Board of Embalmers and Funeral Directors Rules states that:
 Any person signing a cremation authorization form shall be deemed to warrant the truthfulness of any facts set forth in the cremation authorization form, including the identity of the deceased whose remains are sought to be cremated and that person's authority to order such cremation. Any person signing a cremation authorization form shall be personally and individually liable for all damage occasioned thereby and resulting therefrom.
Any discussion of the liability of a county in this regard, however, would have to include consideration of the statutory immunity afforded counties in tort actions. As I recently stated in Op. Att'y. Gen. 2005-149:
 I have described the immunity from liability available to counties in previous opinions. See Op. Att'y Gen. 2003-266. Specifically, A.C.A. § 21-9-301
addresses a county's potential liability stating:
 It is declared to be the public policy of the State of Arkansas that all counties . . . of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents or employees.
 Id. This provision has been applied only to situations involving tort liability. See City of Caddo Valley v. George, 340 Ark. 203, 9 S.W.3d 481
(2000). Furthermore, the Arkansas Supreme Court has extended this immunity to the officers and employees of the political subdivisions when the officers or employees commit negligent acts or omissions in their official capacities. See, e.g., Autrey v. Lawrence, 286 Ark. 501, 696 S.W.2d 315 (1985). This immunity, however, does not extend to intentional torts committed by public officials. See, e.g., West Memphis Sch. Dist. No. 4 v. Circuit Court, 316 Ark. 290, 871 S.W.2d 368 (1994).
 Generally speaking, a county will therefore be immune from liability in State court for negligent actions committed by the employees or officers of the county within the scope of their duties except to the extent that the county has liability insurance.
* * *
 Additionally, if the county were sued in federal court, a different standard would apply. In federal court, the county may be able to claim "qualified immunity." Qualified immunity applies to the actions of individual officers and employees who undertook the performance of their governmental duties in good faith and whose actions did not violate a clearly established constitutional right. Saucier v. Katz, 533 U.S. 194 (2001). This is a test of the "objective legal reasonableness of the action" viewed in the context of the "clearly established" legal rules at the time the action was taken. Id. Again, this question would be one of fact.
Id. at 2-3.
As noted above, the potential liability of a county that orders a body to be cremated without authority or without notifying family members would depend upon all the facts and circumstances. I cannot determine the issue in the absence of any such facts. In addition, counties with questions in this regard should consult with their local counsel.
Question 4 — Is a county responsible for paying for the costs ofthe cremation?
I have found no statute imposing the costs of cremation of unclaimed bodies on counties. As set out earlier, in cases where UAMS accepts a body for anatomical research, the costs of disposition are governed by A.C.A. §§ 20-17-706 and 708. In cases where the county or other public body has possession of the unclaimed body of a pauper and the county court orders cremation, there does not appear to be any statute dictating the responsible entity.[4] As noted above, under prior law, the county court was under a duty to "make such allowance as shall seem just." Although there is no current statute dictating the responsibility for payment, in my opinion a county is authorized to make payment for such cremation, under the county court's authority discussed above and assuming an available appropriation in this regard. In addition, it is my understanding that under current practice, some funeral homes absorb the costs of the burial of unclaimed bodies. I am not aware of whether this practice also applies in the case of cremations. Legislative clarification may be indicated on the point.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] As I stated in Opinion No. 2004-159, "[t]he `county court' strictly speaking, is neither the `county judge' nor the quorum court. It is, however, presided over by one judge, the `county judge,' who, when so presiding, acts in a judicial, rather than an executive capacity. See Arkansas Constitution, art. 7, § 28
and A.C.A. § 14-14-1105(a). . . . [I]t clearly still exists, and consists of the county judge, wearing a judicial hat." Id. at fn 1, quoting Op. Att'y. Gen. 1997-081. In addition, the jurisdiction of the county court over juveniles and bastardy matters has been altered by Amendment 67.
[2] I will note, however, that at the time Act 22 of 1959 was adopted (regarding anatomical research at UAMS), this former statute making it the county court's duty to make an allowance for burial of paupers was in effect. The reference in A.C.A. §20-17-708(b), to existing "laws, rules and practices for disposing of unclaimed bodies" may have had in mind this duty of the county court.
[3] It is not entirely clear whether the county court would have jurisdiction in cases other than those involving "paupers." Although article 7, § 28 also gives the county court jurisdiction over "other case[s] that may be necessary to the internal improvement and local concerns of the respective counties," the statutory grant of jurisdiction expounding on this jurisdiction does not appear to include such matters as the disposition of unclaimed bodies. See A.C.A. § 14-14-1105(b)(5). For authorization regarding the disposition of non-paupers, resort to a court of general jurisdiction for such order is likely advisable. It is my understanding that funeral homes sometimes seek judicial orders for authorization to dispose of unclaimed bodies under these circumstances.
[4] Under the common law of Arkansas it is clear that a decedent's estate is liable for the expenses of burial. SeeDutton v. Brashears Funeral Home, 235 Ark. 120, 357 S.W.2d 265
(1962) and Security Bank Trust Company v. Costen,169 Ark. 173, 273 S.W. 705 (1925). See also 31 Am. Jur. 2d Executors Administrators § 559. Obviously, the estate of a pauper may be limited, however. I have found no clear precedent in Arkansas delineating the obligation of next-of-kin to pay the burial expenses. Cf. generally in this regard, however, The TravelersInsurance Company v. Smith, 338 Ark. 81, 991 S.W.2d 591 (1999) (noting the quasi-property right to a dead body that vests in the nearest relatives of the deceased "arising out of their duty to bury their dead.") Id. at 89. 25A C.J.S. Dead Bodies § 13.