# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1051
_____

Vickie Bell; Phillip B. Bell, Jr.; Johnathan Bell

*Plaintiffs - Appellees*

v.

Pulmosan Safety Equipment Corporation

*Defendant - Appellant*

Ruemelin Manufacturing Company, Inc.; Mine Safety Appliances Company;
Clemco Industries, Inc.; John Doe

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: December 13, 2017
Filed: October 9, 2018

_____

Before SMITH, Chief Judge, ARNOLD and KELLY, Circuit Judges.

_____

SMITH, Chief Judge.

Pulmosan Safety Equipment Corporation ("Pulmosan") appeals the district court's grant of default judgment, arguing that it was never properly served. We agree and reverse.

## I. *Background*

Pulmosan is a defunct New York corporation that produced industrial safety equipment intended to prevent inhalation of pneumoconiosis-causing dusts such as silica.[1] In 1986, faced with numerous product liability claims, it filed a certificate of dissolution with the New York Secretary of State. Following the filing of its certificate of dissolution, Pulmosan eventually ceased to maintain a regular place of business or have a designated registered agent for service of process. However, though the record does not show that he was Pulmosan's registered agent for service of process, Howard Weiss, former president of the company, continued to accept service and legal correspondence on behalf of Pulmosan at his New York City home, an apartment in Manhattan.

This state of affairs seems to have continued even after 2006, when a New York court suspended Pulmosan's dissolution to enable claims based on use of its product that began prior to August 1, 1986. *Ford v. Pulmosan Safety Equip. Corp.*, 831 N.Y.S.2d 353 (N.Y. Sup. Ct. 2006), *aff'd*, 862 N.Y.S.2d 56 (N.Y. App. Div. 2008). Weiss died in May 2013. Pulmosan made no alternative arrangements for service of process after Weiss's death.

---

[1]Generally, pneumoconiosis can be defined "as an inflammation of the lung caused by inhalation of particles of foreign material." *Chambers v. Bigelow-Liptak Corp.*, 344 S.W.2d 588, 590 n.1 (Ark. 1961); *see also Coene v. 3M Co.*, No. 10-CV-6546-FPG, 2017 WL 1046749, at *3 (W.D.N.Y. Mar. 20, 2017) ("Pneumoconiosis is an umbrella term for inflammation and fibrosis in the lungs caused by the occupational inhalation of dust." (citing Stedman's Medical Dictionary at 1522–23 (28th ed. 2006))).

As alleged in the amended complaint in this case, Phillip Bell, Sr., worked in Camden, Arkansas, at a job that exposed him to silica sand from 1968 until sometime between 1982 and 1985. He used a respiratory protection hood produced by Pulmosan. He developed pulmonary silicosis, a pneumoconiosal disorder, and died from the disease in 2010. In October 2013, his widow, Vickie Bell, and sons Phillip Bell, Jr., and Jonathan Bell (the "Bells"), sued Pulmosan and three other producers of safety equipment that Bell had used. The Bells sent a copy of the summons and complaint to Pulmosan, care of Weiss, at Weiss's home address by certified mail, return receipt requested. Delivery was not restricted to the addressee or the addressee's agent.

The documents were received on January 18, 2014, at the apartment building where Weiss resided before his death, and signed for by Ceferino Figueroa, the doorman and desk receptionist.[2] Figueroa regularly signed for tenants' packages and placed them in their mailboxes. He followed this standard practice with the Bells' certified mail, placing it in Weiss's box.

Pulmosan did not file an answer or otherwise defend the suit within the time allowed by the Federal Rules of Civil Procedure. Believing Pulmosan had been served process, the Bells moved for and received the clerk's entry of default in July 2014; however, the district court declined to grant their initial motion for default judgment before the claims against the other defendants were adjudicated. After the claims against the other defendants were resolved, the Bells again moved for default judgment, stating the following regarding service of process: "After being properly served by serving its registered agent for service of process, Howard Weiss,

---

[2]There is some indication that Weiss's widow, who served as secretary and treasurer of Pulmosan while it was a going concern, also lived either in the same unit where Weiss lived or, otherwise, had her own unit in the building, at the time of the alleged service. As will be explained later in this opinion, where she lived at the time of purported service is of no consequence.

Pulmosan did not answer this lawsuit. Mr. Weiss remains the registered agent for Pulmosan, and his address and physical location for service have not changed." Mot. to Re-Assert Default J. at 1, *Bell v. Mine Safety Appliances*, No. 1:13-cv-01075-SOH (W.D. Ark. Mar. 24, 2016), ECF. No. 200. The district court granted the motion, and it entered an order and judgment granting the plaintiffs over $1.3 million in damages in August 2016.

A few weeks after entry of judgment, Pulmosan filed a motion for relief from the judgment under Federal Rule of Civil Procedure 60(b)(4). The motion alleged that Weiss was deceased at the time that service of process was purportedly made upon him. Pulmosan contended that the district court consequently never obtained jurisdiction over it. In response, the Bells argued that service was effective under the Federal Rules of Civil Procedure or under Arkansas or New York law. As a general matter, they suggested that Pulmosan's failure to replace its agent or instruct personnel at Weiss's residence not to accept mail addressed to Pulmosan should excuse their attempted service on a deceased person. They also asserted that Figueroa was authorized to accept process on behalf of Pulmosan. Further, they claimed that Weiss's widow, Patricia Weiss ("Patricia"), was also a former corporate officer for Pulmosan and resided at the same address as Weiss, curing any possible deficiency in service. Additionally, the Bells asserted that Pulsoman's motion itself constituted an appearance that provided the court with jurisdiction, and, in the alternative, requested leave to make another attempt at serving Pulmosan.

The district court found the mail delivery of service of process to Weiss's address effective against Pulmosan. In reaching its decision, the court considered New York case law. It determined that a doorman may "accept service on behalf of individual defendants and corporations in New York upon a showing that the doorman had such authorization." *Bell v. Mine Safety Appliances et al.*, No. 1:13-cv-01075-SOH, 2016 WL 7650651, at \*2 (W.D. Ark. Dec. 6, 2016) (citing *Bezoza v. Bezoza*, 921 N.Y.S. 2d 247, 248 (N.Y. App. Div. 2011)). The court also considered

-4-

that the company had no regular place of business or registered agent, that the plaintiffs used the best address they had for Pulmosan, that a living former officer resided at that same address, and that Figueroa was never instructed not to "sign for or accept any mail addressed to Pulmosan or Weiss." *Id.* Further, the court concluded that Figueroa was an agent not just for Weiss as a building resident, but also for Pulmosan.

The district court held that the facts of the case satisfied the requirements of Rule 4 of both the Federal and Arkansas Rules of Civil Procedure, as well as the Local Rules of the Western District of Arkansas. Accordingly, it ruled that Pulmosan had not demonstrated entitlement to relief under Federal Rule of Civil Procedure 60(b)(4), leading to Pulmosan's appeal.

## II. *Discussion*

We review the denial of Pulmosan's Rule 60(b)(4) motion de novo. *See Johnson v. Arden*, 614 F.3d 785, 799 (8th Cir. 2010) (citation omitted). Federal Rule of Civil Procedure 60(b)(4), under which Pulmosan proceeded at the district court level, requires relief from a judgment when that judgment is void. "A judgment is void if the rendering court lacked jurisdiction or acted in a manner inconsistent with due process." *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir. 2008) (citations omitted). "If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) (citation omitted). Therefore, if service was not proper, the district court lacked jurisdiction, and the default judgment is void.[3]

---

[3]We have not stated which party carries the burden of proof when a defendant moves to vacate a default judgment for want of service, and there exists a circuit split on this issue. *See Arpaio v. Dupre*, 527 F. App'x 108, 113 n.4 (3d Cir. 2013) (listing cases). However, we need not resolve this issue here because the result would be the same under either standard.

Under basic principles of agency law, the death of an agent terminates his authority to act on behalf of the principal. *See* Restatement (Second) of Agency § 121 (1958); 2A C.J.S. Agency § 130 (1972); *Badger Dome Oil Co. v. Hallam*, 99 F.2d 293, 298 (8th Cir. 1938). Weiss's death prevented him from receiving service of process on behalf of Pulmosan. Similarly, even if Figueroa had at some point acted as Weiss's agent, Weiss's death terminated that relationship. *See Ark. Bd. of Embalmers & Funeral Dirs. v. Reddick*, 233 S.W.3d 639, 643 (Ark. 2006) ("The power of agency ends with death of the principal." (citation omitted)); *Wisdom v. Wisdom*, 488 N.Y.S.2d 682, 684 (N.Y. App. Div. 1985) ("[T]he death of a principal ordinarily revokes the authority of the agent . . . . "). Additionally, we reject the Bells' contention that, under New York law, Figueroa qualified as Pulmosan's agent.

The Bells rely on the New York Court of Appeals' statement that "a corporation may assign the task of accepting process and may establish procedures for insuring that the papers are directed to those ultimately responsible for defending its interests." *Fashion Page, Ltd. v. Zurich Ins. Co.*, 406 N.E.2d 747, 751 (N.Y. 1980). *Fashion Page*, however, does not support the Bells' position. It involved an attempted service on a corporation by delivery to a living, subordinate employee to a corporate vice-president. In *Fashion Page*, a process server attempting to serve a corporation (Zurich) went to its office and inquired with a receptionist as to who could accept service. *Id.* at 749. She directed him to Ann Robertson, a woman who served as executive secretary to the vice president in charge of Zurich's New York office. *Id.* Robertson accepted the papers on Zurich's behalf, and when asked, ensured the process server that she could do so. *Id.* However, Zurich later attempted to have the suit dismissed on the basis that this service did not comply with New York statutory requirements. *Id*.

The facts in this case do not show that Figueroa ever worked for Pulmosan or acted on its behalf. The facts also do not reflect that the process server received any

information from Pulmosan or anyone representing it indicating that Figueroa was a proper party to receive service. The record in the instant case simply shows that a mail carrier asked a doorman to sign for a package to be delivered to someone believed to be an apartment resident. In fact, Figueroa occupies a role similar to the one the *Fashion Page* court stated in dicta would *not* qualify under the service provision: "In evaluating whether service is to be sustained, the circumstances of the particular case must be weighed. Delivering the summons to a building receptionist, not employed by the defendant, without any inquiry as to whether [he] is a company employee, would not be sufficient." *Id.* at 751.[4]

The other cases the Bells cite for this proposition fail for similar reasons. *See Eastman Kodak Co. v. Miller & Miller Consulting Actuaries, Inc.*, 601 N.Y.S.2d 10, 11 (N.Y. App. Div. 1993) (holding service valid where service was upon corporation president's receptionist, who was "situated outside the office of the defendant's president" at its place of business, and this manner of service "had been effected . . . on at least six prior occasions," clothing the receptionist "with apparent authority to receive service on behalf of the defendant"); *AMB Fund III New York III & IV, LLC v. WWTL Logistics, Inc.*, 942 N.Y.S.2d 307, 309 (N.Y. App. Term 2012) (holding

---

[4]We also note that the attempted service here is unlike that which occurred in *Fashion Page*, which took place in an office building that was the corporation's place of business. *See Avanti Enters., Inc. v. A&T Produce, Inc.,* No. 09-CV-1185-NGG-SMG, 2010 WL 3924771, at *3 (E.D.N.Y. July 21, 2010) (determining *Fashion Page* inapposite where "service [was] made on an individual who [was] not authorized to accept service at a location that [was] not the corporation's actual place of business"), *report and recommendation adopted*, No. 09-CV-1185, 2010 WL 3909243 (E.D.N.Y. Sept. 30, 2010); *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356-MKB-JO, 2016 WL 233665, at *6 (E.D.N.Y. Jan. 20, 2016) (collecting cases and holding service invalid where "Plaintiff's process server did not go to a corporate office or speak to any corporate employees who directed him to an individual authorized to accept service. Instead, Plaintiff's process server went to a mail center where [the defendant] rented a post office box and spoke to a mail center employee.").

service valid where general manager, who was the individual identified by secretary as proper recipient of service and exercised "supervisory duties" and "had accepted process in the past," signed for papers); *see also Bezoza*, 921 N.Y.S.2d at 248 (holding service through doorman valid as to individual defendants but invalid as to corporate defendant because the plaintiff "failed to show that the doorman was 'an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service' on behalf of the corporation" (quoting N.Y. C.P.L.R. § 311(a)(1))). New York law does not support holding that service was valid.

Arkansas Rule of Civil Procedure 4(d)(5) allows service upon, among other individuals, a corporation's managing or general agent. *See Lyons v. Forrest City Mach. Works, Inc.*, 785 S.W.2d 220, 221–22 (Ark. 1990) (holding service to corporation's plant manager valid based on the fact that he had been with the company for 32 years, was extremely knowledgeable about the business, and "unquestionably had some measure of discretion in operating or managing [corporation's] business," rendering him "a ranking person within [the corporation's] business . . . who could be trusted to make sure that any summons would be promptly brought to the attention of the corporate people."); *May v. Bob Hankins Distrib. Co.*, 785 S.W.2d 23, 25 (Ark. 1990) ("Service on the secretary of the corporation and the bookkeeper, who testified that she was 'more or less in charge of the office' at the time of the service, would be proper under Rule 4(d)(5)."). There is no support in Arkansas law for valid service of process upon a corporation by delivery to the residence of a deceased former corporate officer. The doorman to the deceased officer does not substitute for the former corporate agent. Accordingly, we hold that service was not made upon Figueroa as Pulmosan's agent.

Finally, Weiss's widow's possible habitation at her husband's former residence does not validate the service in this case based on her former status as a corporate officer. The Bells cite no authority for the proposition that a pre-dissolution corporate

position revives if that corporation's dissolution is suspended. And neither the New York trial or the appellate court opinion affirmatively reinstates any Pulmosan officers or directors. Even the Bells refer to both Weisses as "former" officers. *See, e.g.*, Appellees' Br. at 4, 6, and 14; *accord* Pls.' Concise Resp. & Br. in Opp'n to Def. Pulmosan Safety Equipment Corporation's Mot. to Vacate J., Ex. 1, at 2 n.1, *Bell v. Mine Safety Appliances et al.*, No. 1:13-cv-01075-SOH (W.D. Ark. Oct. 11, 2016), ECF No. 212-1 ("While Mr. Weiss [,following suspension of Pulmosan's dissolution,] has not been reinstated as President of Pulmosan or appointed any position within Pulmosan that would authorize him to take action on behalf of Pulmosan . . . Mr. Weiss, as the former President, is the most appropriate person to direct this Chapter 7 filing." (citation omitted)). Therefore, service upon Patricia, even if effectuated, does not provide jurisdiction over Pulmosan.

### III. *Conclusion*

Because the attempted service of process in this case was invalid, the district court lacked jurisdiction over Pulmosan, and its subsequent judgment is void. Pulmosan's Rule 60 motion should have been granted. We therefore reverse and remand for proceedings consistent with this opinion.

_____