2011 Ark. App. 326

**Charles Alvin BOATRIGHT, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–1065.**

Court of Appeals of Arkansas.

May 4, 2011.

Danny Chris Ivy, Fayetteville, for appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Charles Alvin Boatright was convicted by a jury of one count of rape and ten counts of possessing matter depicting sexually explicit conduct involving a child. Mr. Boatright was sentenced to forty years in prison for his rape conviction and five years in prison for each of his convictions for possessing child pornography. The trial court ordered the rape conviction to be served consecutively with two of the child-pornography convictions, and concurrently with the remaining convictions, resulting in an aggregate prison term of fifty years.

In this appeal, Mr. Boatright does not challenge his rape conviction, nor does he challenge the sufficiency of the evidence to

support his convictions for possessing matter depicting sexually explicit conduct involving a child. Mr. Boatright's sole point on appeal is that the trial court improperly denied him the right to fully develop his defense that someone planted the offending visual CDs containing child pornography in his bedroom. Mr. Boatright maintains that this defense would have negated the requirement of the applicable statute that he knowingly possessed the illegal photographs. We affirm.

Arkansas Code Annotated section 5–27–602(a)(2) (Repl.2006) provides:

> (a) A person commits distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child if the person knowingly:
>
> (2) Possesses or views through any means, including on the internet, any photograph, film, videotape, computer program or file, computer-generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct.

"Sexually explicit conduct" includes the lewd exhibition of the genitals or pubic area of any person, or the breast of a female. Ark.Code Ann. § 5–27–601(15)(F) (Repl.2006).

Officer Russell Alberts of the Madison County Sheriff's Office testified for the State. Officer Alberts testified that in the fall of 2009 he received a report involving the molestation of a child. The victim was J.M., and Mr. Boatright is J.M.'s great uncle. In an interview with the police, J.M. said that several years ago when she was five or six years old, Mr. Boatright pulled her panties down, licked her privates, and placed his finger in her private area.

Officer Alberts testified that, based on the information he received, he believed that the rape may have been recorded on video, and he obtained a warrant to search Mr. Boatright's bedroom. Mr. Boatright lived with his sister in a house owned by their elderly mother, who had recently died. During the search of Mr. Boatright's bedroom, the police seized two computers and numerous CDs that were next to one of the computers. Officer Alberts viewed the contents of the CDs, and about ninety of them contained pornography. Officer Alberts testified that nine of the CDs contained child pornography, and he estimated that there were about 462 photographs fitting that description. The jury was shown a sampling of more than ten of the photographs, which depicted naked young girls in provocative poses. Officer Alberts thought that the CDs containing child pornography were several years old. Christopher Edquist, a digital-evidence analyst at the crime lab, examined the CDs and agreed that they appeared to be old and that most contained scratches.

The rape victim, J.M., testified that she is now eleven years old. She stated that she had recently told her mother about the incident. J.M. stated that it happened at her grandmother's house when she was five or six. According to J.M., she was in Mr. Boatright's bedroom where there was a computer, a bed, and some dolls. She indicated that Mr. Boatright pulled her panties down and put his tongue in her vagina. Then Mr. Boatright told her not to tell anyone or she would get in trouble.

During the investigation of the case, Mr. Boatright waived his rights and agreed to a police interview. During the interview, Mr. Boatright at first denied any improper contact with J.M., and later said he could not remember. Subsequently, Mr. Boatright admitted that after J.M. was undressed, "I think I rubbed her, maybe a little with my finger, and then I said, look, I'm sorry, I shouldn't have done that."

Mr. Boatright was asked during the interview if everything in his room belonged to him, and he said that everything except a sewing machine was his. Mr. Boatright acknowledged that the police would probably find child pornography on some of his older CDs, and he said he enjoyed looking at those pictures years ago when he was going through a divorce. Mr. Boatright told the police, "I did have some weaknesses as you saw from some of the pictures." The police showed Mr. Boatright some of the illicit photographs from the CDs they seized from his bedroom, and the following exchange occurred:

INVESTIGATOR: Okay, I hope I don't offend you anymore, but I need you to look at these. Do you remember those pictures?

MR. BOATRIGHT: Yeah, I remember those from years ago. They was some pictures that was sent to me years ago and I put 'em on a deal.

INVESTIGATOR: When you look at a girl like that, how old do you think she is?

MR. BOATRIGHT: I don't have a clue ... probably 3.

INVESTIGATOR: Huh?

MR. BOATRIGHT: Probably 3, somewhere in there.

INVESTIGATOR: 3? How about the next girl?

MR. BOATRIGHT: 6 or 7.

INVESTIGATOR: You see anybody in there that you think's over 18?

MR. BOATRIGHT: No, I'd say this one might be about 12 or something.

INVESTIGATOR: What about these here. Anybody there that's over 18?

MR. BOATRIGHT: Probably not, no.

INVESTIGATOR: You recognize those pictures being on your computer or a disk?

MR. BOATRIGHT: They were, they were on a disk, I'm sure.

INVESTIGATOR: Did you see anybody there that is over 18 years of age?

MR. BOATRIGHT: No.

Mr. Boatright's sister Delores Martin, who is also J.M.'s grandmother, was called as a defense witness. Ms. Martin testified that she and Mr. Boatright live in the same house, and that they both took care of their mother before she died. Ms. Martin stated that the house was worth between $70,000 and $80,000, and that Mr. Boatright was entitled to a one-seventh inheritance of the house, but only if it was sold. Ms. Martin testified that she prepared an affidavit as to the value of the estate, and that Mr. Boatright filed it with the probate court. Ms. Martin maintained that there was not any reason for the family members to want Mr. Boatright to leave the house, and stated that she did not want him to leave. Ms. Martin was asked whether her son was intending to buy the house, and the trial court sustained the State's objection to the question on the basis of relevancy. Ms. Martin testified that she did not know whether anyone could have planted the illicit CDs, although she did state that there were times when both she and Mr. Boatright were away from the house. Ms. Martin said that "when I was at work I would have no idea who had the opportunity to be at the house."

Danny Martin, J.M.'s father, was also called as a defense witness. Mr. Martin testified that he never saw any indication that Mr. Boatright was interested in child pornography. Mr. Martin was asked whether it was possible that someone could have planted the CDs, and the State objected that this was an improper question. The trial court sustained the State's objection. Then appellant's counsel asked whether Mr. Martin's brother, Cory Mar-

tin, had an interest in purchasing the house, and the trial court excluded that testimony on the ground that it was not relevant. Cory Martin also testified, and appellant's counsel asked him whether he was attempting to buy a piece of property. For the third time, the trial court sustained the State's objection to that line of questioning.

Mr. Boatright testified on his own behalf. He denied committing any act against J.M., and further denied that any of the CDs containing child pornography belonged to him. Mr. Boatright testified that he confessed to criminal activity because he thought it would somehow help J.M.

Mr. Boatright stated that, on the day after his mother died, his sister told him he needed to move because her son wanted the house. Mr. Boatright testified that Cory Martin wanted the house, and he believed it could have been Cory who put the CDs in his room. Mr. Boatright further stated, "As for J.M. wanting to do anything to me, the only thing that I know is because it was two days after the probate was signed and I knew who wanted the house and I had been asked to move because he wanted the house." Mr. Boatright denied any knowledge of the child pornography seized from his bedroom, stating:

I do not have a clue where it came from. I believe anyone could have something to do with it. The doors were never locked. It could have been put in my room while I was gone to work. I didn't check to see what was there and what wasn't.

In this appeal, Mr. Boatright challenges his ten convictions for possessing matter depicting sexually explicit conduct involving a child. His sole argument for reversal is that the trial court improperly denied him the right to fully develop his defense that someone planted the offending CDs in his room. Mr. Boatright asserts that he was prevented on a number of occasions from developing evidence that his family had a financially motivated vendetta against him. In particular, the trial court refused to allow him to elicit from defense witnesses testimony that Cory Martin was wanting to buy appellant's mother's house. Moreover, the trial court did not permit J.M.'s father to answer a question about whether it would be possible for someone to have planted the CDs. Mr. Boatright contends that this relevant evidence was erroneously excluded and resulted in prejudice because it emasculated his defense to the child-pornography charges.

Pursuant to Ark. R. Evid. 401, "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. A trial court's decision regarding relevancy is entitled to great weight and will be reversed only if the trial court abused its discretion. *Dixon v. State*, 311 Ark. 613, 846 S.W.2d 170 (1993). Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but establishes that the decision was arbitrary and groundless. *See Teater v. State*, 104 Ark.App. 268, 290 S.W.3d 623 (2009).

We hold that the challenged evidentiary rulings by the trial court did not constitute an abuse of discretion. As found by the trial court, the issue of whether Cory Martin wanted to buy appellant's deceased mother's house was too removed from the issue of appellant's guilt to be relevant. While Mr. Boatright testified that Cory Martin wanted to buy the house and he thought that Cory might

have planted the CDs, there was nothing to substantiate his theory that Cory had in fact planted the CDs in his bedroom. On the issue of whether it would have been possible for someone to have planted the CDs, both Mr. Boatright and his sister who resided at the house indicated in their testimony that such a possibility existed. While the trial court did not allow J.M.'s father to weigh in on that issue, he did not live there, and even if ⌊8he shared the opinion that it was possible to plant the CDs, this would merely have been cumulative to other testimony.

 Furthermore, even had there been an evidentiary error by the trial court as alleged by the appellant, the error would have been harmless. We do not presume prejudice when error is alleged; rather, it is the appellant's burden to produce a record that demonstrates prejudice has occurred. *Gatlin v. State,* 320 Ark. 120, 895 S.W.2d 526 (1995). The supreme court has repeatedly held that an appellant must show prejudice because we do not reverse for harmless error. *Id.* Before an evidentiary error may be declared harmless, the reviewing court must conclude that the error is slight and the remaining evidence of a defendant's guilt is overwhelming. *Anderson v. State,* 71 Ark.App. 200, 33 S.W.3d 173 (2000). Moreover, our supreme court has held that evidentiary error is harmless if the same or similar evidence was otherwise introduced. *See Boyle v. State,* 363 Ark. 356, 214 S.W.3d 250 (2005).

In the present case, the evidence that Mr. Boatright knowingly possessed the CDs containing child pornography was overwhelming. The police found the CDs next to Mr. Boatright's computer in Mr. Boatright's bedroom, and the condition of the CDs suggested that they were several years old. Mr. Boatright confessed to the police that several years ago when he was going through a divorce he obtained some CDs that depicted child pornography, and that he enjoyed looking at it. When shown the sexually explicit photographs of young girls on the CDs seized from his bedroom, Mr. Boatright acknowledged that he had seen them years ago and that he had saved them. Mr. Boatright indicated in the interview that he viewed ⌊9this material at around the same time that he molested J.M. By Mr. Boatright's own admission he knowingly possessed matter depicting sexually explicit conduct involving children. Moreover, while it was belied by his confession, Mr. Boatright was permitted in his testimony to develop his defense that he had never seen the CDs and that therefore they must have been planted. Because Mr. Boatright cannot demonstrate prejudice, we hold that any potential error by the trial court was harmless.

Affirmed.

PITTMAN and GLOVER, JJ., agree.